## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
### CENTRAL DIVISION

| | | |
|---|---|---|
| ANDREW PAQUETTE,<br>PLAINTIFF, | ) ) ) | CIVIL RIGHTS COMPLAINT<br>42 U.S.C. §1983 |
| V. | ) ) ) | CIVIL NO. _____ |
| NASHOBA REGIONAL SCHOOL<br>DISTRICT;<br>MELANSON, HEATH AND COMPANY;<br>JOHANNA VAN HOUTEN RILEY, in her<br>official capacity as the former<br>Superintendent for the Nashoba Regional<br>School District and in her individual<br>capacity; and<br>CARLOS LLANSO,<br>ANNE KINGAN,<br>ALICE ROEMER,<br>MARY BETH YENTZ,<br>LINDA WEATHERBEE,<br>ADAM TOCCI,<br>JEANNE WYAND,<br>NANCY FLEMING, in their official<br>capacities as former members<br>of the Nashoba Regional School Committee<br>and in their individual capacities,<br>DEFENDANTS. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **05-40099**fDS<br><br>**VERIFIED COMPLAINT**<br><br>**JURY DEMAND**<br><br>RECEIPT # 404593<br>AMOUNT $ 250.00<br>SUMMONS ISSUED ✓<br>LOCAL RULE 4.1 ✓<br>WAIVER FORM ✓<br>MCF ISSUED ✓<br>BY DPTY. CLK. S gones<br>DATE 6-21-05 |

## NATURE OF THE CASE

This is an action by a former public employee against the Nashoba Regional School District (hereinafter "the District") in Massachusetts, former members of the Nashoba Regional School Committee, (hereinafter "the School Committee), the former Superintendent of the Nashoba Regional School District, Johanna Van Houten Riley (hereinafter "Van Houten"), and accounting Firm Melanson, Health & Company, alleging claims under 42 U.S.C. §1983; 29 U.S.C. § 201, et. seq.; the Massachusetts Fair Employment Practices Act, M.G.L. c. 149, § 148; the Massachusetts Privacy Statute,

M.G.L. c. 214, §1B; the Massachusetts Civil Rights Statute, M.G.L. c. 12, §11I, wrongful

termination, defamation, civil conspiracy, and breach of contract.

## JURISDICTION

1.      The District Court of Massachusetts has jurisdiction over the claims asserted in

this complaint pursuant to 29 U.S.C. §1331 and §42 U.S.C. §1983.  Jurisdiction is

also conferred and authorized by 29 U.S.C. §201, *et. seq.*


2.      Venue is proper in the District Court of Massachusetts under 28 U.S.C. § 1391(b)

because Defendants reside in the District.  Venue is also proper in the District of

Massachusetts pursuant to 28 U.S.C. §1391(b) because all the events giving rise

to this action occurred in this District.


## PARTIES

3.      Plaintiff, Andrew Paquette, is a citizen of the Commonwealth of Massachusetts

presently residing at 21 Homestead Ave, Auburn, Commonwealth of

Massachusetts.


4.      Defendant, Nashoba Regional School District, is a regional school district in the

Commonwealth of Massachusetts organized under chapter 71 of the General

Laws of Massachusetts by the Towns of Bolton, Stow, and Lancaster to provide

public education to the children of these towns.  The offices of the School District

are located at 50 Mechanic Street, Bolton, Massachusetts.


2

5.      Defendant, Johanna Van Houten Riley, the former Superintendent of the Nashoba Regional School District, is currently a citizen of Massachusetts and Principal at Westport High School with a place of business at Westport High School, 19 Main Road Westport, MA 02790. Defendant Johanna Van Houten Riley was employed as the Superintendent of the Nashoba Regional School District and acting under the authority and color of state law at the time the alleged incidents occurred.

6.      Defendant Carlos Llanso, is currently a citizen of Massachusetts residing at 119 Moffett Street, Lancaster, MA 01523. Defendant Llanso was the former Chair of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

7.      Defendant Anne Kingan, is currently a citizen of Massachusetts residing at 120 West Berlin Road, Bolton, Massachusetts 01740. Defendant Kingan was the former Vice Chair of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

8.      Defendant Alice Roemer, is currently a citizen of Massachusetts residing at 185 Main Street, Bolton, Massachusetts 01740. Defendant Roemer was the former Treasurer of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

9.    Defendant Mary Beth Yentz, is currently a citizen of Massachusetts residing at 19 Johnny Appleseed Lane, Lancaster, Massachusetts 01453. Defendant Yetz was a former member of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

10.    Defendant Linda Weatherbee, is currently a citizen of Massachusetts residing at 441 Neck Road, Lancaster, Massachusetts 01523. Defendant Weatherbee was a former member of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

11.    Defendants Adam Tocci, is currently a citizen of Massachusetts residing at 15 Deacon Benham Road, Stow, Massachusetts 01775. Defendant Tocci was a former member of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

12.    Defendant Jeanne Wyand, is currently a citizen of Massachusetts residing at 113 Maple Street, Stow, Massachusetts 01775. Defendant Wyand was a former member of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

13.    Defendant Nancy Fleming, is currently a citizen of Massachusetts residing at 26 Dunster Drive, Stow, Massachusetts 01775. Defendant Fleming was a former

member of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

14.    Defendant, Melanson, Heath and Co., P.C., is a Massachusetts accounting firm with a corporate headquarters located at Massachusetts at 51 Davis Street Greenfield, MA 01301.


## FACTS

15.    In August 1999, the District hired Plaintiff to serve as its Director of Finance and Operations. At the time of hire, Plaintiff agreed that he would provide detailed financial information detailing every line item in the budget and the balances in an "Expenditure Detail Report."


16.    Upon information and belief, in the fall of 2000, the Nashoba Regional School Committee hired Van Houten as the new Superintendent of Public Schools for the District. Van Houten has an M.B.A. in finance from Boston College and she indicated during her interview for the position that this financial background would allow her to turn around the District's financial problems which predated both Plaintiff and herself.


17.    As the new Superintendent of Public Schools, Van Houten was Plaintiff's immediate supervisor.

5

18.    Upon her hire, Van Houten informed Plaintiff that he was to begin reporting the budget to the School Committee on an EXCEL Spreadsheet called a "Result of Operations Report" rather than the pre-existing reports generated from the financial accounting system, called a "Expenditure Detail Report". This new "Result of Operations Report" was presented to the School Committee on a monthly basis and summarized the Expenditure Detail Report. In addition, when negative balances showed up on the EXCEL spreadsheet, Van Houten had the Plaintiff change them.

19.    Moreover, at the time of her hire, Van Houten advised the School Committee to change the level of scrutiny that the School Committee exercised over the District's financials.

20.    On information and belief, the School Committee agreed to refrain from receiving the detailed Expenditure Detail Report and instead approved the use of the "Results of Operations" report.

21.    While employed as the Director of Operations and Finance and while working under the supervision of Van Houten, Plaintiff apprised Van Houten of the District's finances. Plaintiff did not disclose detailed information to the School Committee as expressly directed by Van Houten.

6

22.    On several occasions during her tenure as Superintendent, Van Houten personally instructed Plaintiff on the manner in which he should alter the District's financial reports.

23.    The District had a long history of financial problems. In the fall of 2000, Plaintiff and Van Houten jointly discovered the failure of the former SPED Director to properly budget for out-of-district special education tuitions. Throughout his tenure, Plaintiff alerted Van Houten to the District's budget problems, including accelerated construction project spending. Periodically Plaintiff would ask for the budget to be frozen. In the Spring of 2002, Plaintiff alerted Van Houten to the fact that the District was facing an a deficit estimated at over one million dollar ($1,000,000.00).

24.    Plaintiff requested that for the remainder of the school year a "spending freeze" be issued.

25.    Despite the fact that Van Houten issued a written "spending freeze" as requested by Plaintiff, Van Houten continued to authorize approximately one million dollars ($1,000,000.00) in expenditures that fiscal year. She directed that Plaintiff sign off on these authorizations and assured Plaintiff that the budget would not be over expended. Eventually, because of the fiscal crisis Plaintiff attempted to refuse altogether to authorize any further expenditure and there were approximately 150

7

purchase orders that Plaintiff did not sign or process. The School Committee also authorized spending after the issued "spending freeze."

26.    Plaintiff detailed the growing, multi-million dollar deficit to Van Houten and the Chair of the School Committee, Carlos Llanso, in a closed meeting prior to the close of the fiscal year in June of 2002.

27.    The same day in which Plaintiff detailed the multi-million dollar deficit to Van Houten and the School Committee chair, he explained the situation with the Districts' financial issues at a Budget Sub-Committee meeting. At this meeting, members of the School Committee expressed outrage and accused the Plaintiff of criminal activity. Both Van Houten and Llanso failed to intervene on the attack against Plaintiff.

28.    On information and belief, the Budget Sub-Committee took no minutes at that meeting, despite an affirmative obligation to do so. Jeanne Wyand, the budget Sub-Committee chair was responsible for taking minutes at budget sub-committee meeting, which were maintained for meetings on an uneven and sporadic basis.

29.    On or about June 20, 2002, in a letter to Van Houten, Plaintiff submitted his resignation. In a June 22, 2002 follow-up e-mail to Van Houten, Plaintiff stated that he was willing to rescind his resignation if Van Houten wanted to discuss the issues in detail.

8

30.   Van Houten accepted Plaintiff's resignation on or about June 26, 2002 by letter. However, Van Houten also thanked the Plaintiff for his loyalty and service to the District and explained she did not wish for Plaintiff to immediately resign, requesting he stay his position until September 13, 2002.

31.   Plaintiff accepted the offer of continued employment and agreed to stay at his position until September 13, 2002 as Van Houten had requested.

32.   There was no further action or discussion about Plaintiffs employment situation until August of 2002.

33.   During a period in early to mid-August when Plaintiff was out of the country on vacation, Van Houten and Alice Roemer publicly claimed they "discovered" an extensive budget deficit. Van Houten suggested she had no previous knowledge of the true financial picture of the District. She placed the blame for the deficit solely on Plaintiff. The District also hired the independent auditing firm, Melanson, Heath and Company, P.C., to audit the District's finances.   Plaintiff did not start learning of these facts until on or about August 16, 2002.

34.   Because of the June meetings with the Superintendent, the Chair of the School Committee, the Budget Sub-Committee, as well as, other Committee members had actual knowledge that the Superintendent's public statements were false. At no time did these individuals request that Van Houten refrain from making public

statements with the implication that Plaintiff engaged in criminal activity and that he alone bore responsibility for the District's financial problems.

35.     When Plaintiff returned from vacation on August 16, 2002, he met with Van Houten. Van Houten asked Plaintiff to return the School District's property and told him it would be "in the best interest of the District and you if we ended our relationship effective immediately." Van Houten offered to continue Plaintiff's pay and compensation for a three-week period through September 13, 2002 and write him a letter of recommendation.. She did not expressly state to him the status of his employment at that time. Later, she publicly claimed he was on "administrative leave."

36.     At this meeting, Van Houten also told Plaintiff that the District hired forensic accountants Melanson, Heath & Company to review the District's financial records and asked for Plaintiff's help in the investigation. Van Houten and the School Committee Members did not make Plaintiff aware that there was a criminal investigation or that she contacted criminal authorities. In fact, Van Houten stated that the District had only contacted Melanson, Heath & Company. At that time the only criminal investigation Plaintiff knew about was a prior District Attorney investigation from years before.

37.     After this meeting, Plaintiff was escorted from the property by the Assistant Superintendent in view of the public on the direction of Van Houten.

38. On or about August 19, 2002, Plaintiff spoke with Melanson, Heath & Company accountants to help in their internal audit of the financial records as Van Houten requested. Van Houten, as well as the District and the School Committee, failed to inform Plaintiff that a criminal investigation had been convened regarding the District's finances at the time he helped with the internal audit.

39. In late August 2002, Plaintiff read a *Worcester Telegram & Gazette* article wherein he learned that the District had called the authorities and initiated a criminal investigation. According to that article, Van Houten and Alice Roemer, the District Treasurer, publicly claimed that they had spotted irregularities in the District's books eleven (11) days earlier while reviewing the District's books.

40. At no time did Van Houten, Roemer, or other members of the School Committee disclose that Plaintiff had disclosed the financial crisis to Van Houten, Carlos Llanso, and the Budget Subcommittee in June.

41. At no time, either before or after the internal audit, did Van Houten, the District, or the School Committee Members offer to protect any of the Plaintiffs statements from being used in a later criminal proceeding or inform Plaintiff of his right to protect himself from self-incrimination.

42. After the financial situation of the School District became public, Van Houten continually addressed the School Committee in meetings attended by hundreds of

people. The general theme conveyed by Superintendent Van Houten was that Plaintiff engaged in misconduct and that she was not aware of this misconduct with the implication that Plaintiff engaged in criminal wrongdoing.

43.     On or about August 30, 2002, the District approached Plaintiff regarding assistance with the financial audit a second time. In the letter from the Superintendent, Plaintiff was accused of failing to appear at a meeting.

44.     As Plaintiff was now aware of the pending criminal investigation, he requested that he receive questions in advance and be allowed to consult with an attorney at any subsequent meetings. Van Houten refused these request. Moreover, neither Van Houten nor the District offered Plaintiff a grant of immunity from the use of information he gave in the forensic audit.

45.     In a written letter to Plaintiff on September 11, 2002, Van Houten threatened to impose discipline against Plaintiff for what she stated was his failure to cooperate with the District's fiscal investigation.

46.     Because Van Houten's written threats were a violation of his federal and state constitutional and statutory rights, Plaintiff did not participate in the forensic review. Moreover, Plaintiff's experience with Melanson, Heath & Company, the firm hired to conduct the forensic audit, was negative and Plaintiff did not trust Melanson, Health & Company.

47.   As threatened, the District imposed discipline when it withheld Plaintiff's compensation for the month of September. In a letter dated September 16, 2002 by the School District's attorney, which requested Plaintiffs' continued cooperation with the financial audit, it was stated that "the region is reserving any payments to Mr. Paquette pending his response." In fact, the District actually caused an electronic withdrawal of the wages paid to Plaintiff from the Plaintiff's personal bank account.

48.   The District withheld both wages and earned and unused vacation time from the Plaintiff.

49.   On or about this same time, Van Houten drafted a multi-paged memo to the public wherein she placed exclusive blame for the fiscal crisis on Plaintiff. In said diatribe, she mentioned Plaintiff thirty-two (32) times and implied that he was the sole blame for the District's financial crisis, despite her knowledge that this was not the truth.

50.   Van Houten made repeated, public accusations that Plaintiff was at fault for the fiscal crisis at public meetings held after the fiscal crisis was disclosed. She stated that Plaintiff was at fault and implied the Plaintiff was at fault for the crisis in the presence of both the School Committee and members of the public. In addition, during said public meetings, Van Houten expressed her ignorance of the fiscal crisis.

51.   From the date in which the financial issues of the District went public, the Defendants made, and continued to make, false statements regarding the Plaintiff and his involvement in the financial problems of the school. Public statements were made both at public meetings and to the press both in their individual capacities and while they were acting in their official capacities as School Committee members. False statements included comments that the Plaintiff was to blame for the District's financial crisis, comments that the Plaintiff engaged in unethical accounting practices, comments that the plaintiff engaged in criminal activity, comments that the Plaintiff forged signatures, and comments that the Plaintiff was solely responsible for the financial crisis at Nashoba regional schools.

52.   At all times, Defendants knew that the statements made to the public regarding Plaintiffs involvement were false and, despite Plaintiff's September 25, 2002 letter to the District's attorney requesting that the Defendants retract their statements, they have failed to do so.

53.   As a result of the facts contained herein, Van Houten's contract for employment was not renewed by the Defendants and the Chair of the School Committee did not seek reelection.

54.   Plaintiff alleges that his constitutional rights, privileges or immunities have been violated and that the District unlawfully withheld Plaintiff's compensation and wages and that the aforementioned facts form the basis for the allegations:

## Count I:

## Violation of Fifth Amendment Right to Be Free From Self-Incrimination Under 42 U.S.C. §1983

55.   The Plaintiff repeats and realleges his allegations set forth at Paragraphs 1 through 54 of this Complaint as if fully restated herein.

56.   At no time when the District requested that Plaintiff participate in the internal forensic investigation did the District, Van Houten acting in her official capacity, or the School Committee members acting in their official capacity, inform Plaintiff that if he participated in the internal financial investigation he would be immune from having any statements used against him in a subsequent or ongoing criminal investigation.

57.   Defendants attempted to leverage their position as Plaintiff's employer by forcing him to provide self-incriminating information or face discipline while employed. At no time did the Defendants offer Plaintiff immunity for statements made in the course of the internal investigation. This violated Plaintiff's Fifth Amendment right to protection against self-incrimination.

15

58.    When the Defendants "disciplined" Plaintiff by failing to provide him earned compensation it was discipline for Plaintiff's refusal to answer questions pursuant to an internal investigation without offering him immunity from having these statements be used against him in a subsequent or on-going criminal investigation. This violated Plaintiff's Fifth Amendment right to protection against self-incrimination.

59.    Moreover, in September of 2002, the Nashoba Regional School District filed a Civil Action in Massachusetts State Court against Plaintiff seeking the right to circumvent Plaintiff's constitutional protections and compel his sworn testimony in the internal audit. At all relevant times, the criminal investigations requested by and initiated by this public entity remained on-going. At no time did the School District indicate or offer that if Plaintiff answered questions that he would be immune from having any statements used against him in the pending criminal investigation. This coercion violated Plaintiff's Fifth Amendment right to protection against self-incrimination.

### Count II:

### Fourteenth Amendment Deprivation of Property and Liberty Interest under 42 U.S.C. §1983

60.    The Plaintiff repeats and realleges his allegations set forth at Paragraphs 1 through 59 of this Complaint as if fully restated herein.

61. Plaintiff was a public employee with a property interest in continued employment through September 13, 2002. He also had a property interest in his earned and unused wages from September 1, 2002 to September 13, 2002.

62. The public statements made by the Defendants outlined in paragraphs 1 to 54, as well as, Counts V , VI, and VII of this complaint are false.

63. These statements made by the Defendants seriously damage Plaintiff's standing and associations in his community and place his good name, reputation, honor, and integrity at stake.

64. The stigmatizing statements and charges were made formally by Defendants in their official capacities as represeantives and/or agents of the School District and were intentionally publicized at public meetings and to newspapers that report to the public.

65. The stigmatizing statements were made in conjunction with a series of adverse employment actions being taken against the Plaintiff. For example, the Plaintiff's was escorted off the District's property and told by Van Houten that it was best if the District and he parted ways without being told the status of his employment at that time. Plaintiff was also disciplined in his employment via the District's failure to pay him wages through September 13, 2002 and his termination, despite

the District's prior offer that he would remain employed with the District until September 13, 2002, which he accepted.

66. Despite letters requesting information regarding the nature of his employment and the actions taken, Plaintiff was not allowed an opportunity to review the reasons and evidence for the planned termination, or the deprivation of wages nor was he allowed to present his position before any final action was taken against him. This violated his rights to not be deprived of property interest without due process.

67. In addition, the District failed to comply with the employee's request for an adequate name-clearing opportunity as requested in the September 25, 2002 letter to the School District's attorney.

68. As a result of their failure to provide Plaintiff with an adequate name clearing hearing, the Plaintiff was deprived of his liberty interest in continued employment and wages until September 13, 2002.

## Count III:

## Violation of Fair Labor Standards Act, 29 U.S.C. §201, et. seq.

69. The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 68 of this Complaint as if fully restated herein.

70.    Defendants failed to pay the Plaintiff the wages due him free and clear during the period of September 1, 2002 to September 13, 2002. Said wages due and owing were in the amount of approximately $3,000.00.

71.    The Defendant's failure to compensate Plaintiff for the period of September 1, 2002 to September 13, 2003 was willful. Willfulness is evidenced by Van Houten's letter dated September 11, 2002 stating that the Plaintiff's failure to cooperate with the fiscal audit would result in "discipline" and by the District's electronic withdrawal of these wages from Plaintiff's personal bank account. Moreover, willfulness is evidenced by the letter sent by the School District's attorney, dated September 16, 2002, stating that the "Region is reserving any payments [to Plaintiff] pending his response [in the investigation]".

72.    As a result of said actions, the Plaintiff suffered damages.

## Count IV:

## Violation of Massachusetts Wage and Hour Laws

73.    The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 72 of this Complaint as if fully restated herein.

74.    When Defendants withheld Plaintiffs' compensation and vacation pay they committed a per se violation of M.G.L. c. 149, § 148.

75.    The Defendants intentionally withheld the earned but unused vacation pay for several weeks and provided the earned but unused vacation pay only after receiving a demand letter from Plaintiff's counsel. Plaintiff has not received the compensation due him for the pay period from September 1, 2002 to September 13, 2002.

76.    On December 9, 2002, the Plaintiff received a right to sue letter on his M.G.L. c. 149, § 148 claim from the Massachusetts Attorney General pursuant to M.G.L. c. 149, § 150; M.G.L. c. 151, §§. 1B and 20.

77.    The Right to sue letter grants Plaintiff Andrew Paquette the right to sue for attorney's fees and treble damages pursuant to M.G.L. c. 149, § 150.

## Count V:

## Defamation Against the District, Van Houten and School Committee Members

78.    The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 77 of this Complaint as if fully restated herein.

79.    The Plaintiff was employed as Director of Finance and operations for the Nashoba Regional School District From 1999 to 2002. Throughout his employment with the District, Plaintiff developed a reputation for the highest standards of honesty and integrity, has served his employers and the community as a responsible, reliable, and law-abiding person, and has thereby enjoyed and values the good

opinion, respect, confidence, and esteem of his employers, coworkers, friends, and residents of the community in which he lives and works.

80.    After the District's financial situation was disclosed to the public, Defendants knowingly prepared and asserted many false statements to the public imputing Plaintiff's character and reputation by blaming him for the District's financial problems. These statements include false statements concerning Plaintiff's job performance and included false statements that the Plaintiff was to blame for the District's financial crisis, false statements that the Plaintiff engaged in unethical accounting practices, false statements that the Plaintiff engaged in criminal activity, false statements that the Plaintiff forged signatures, and false statements that the Plaintiff was solely responsible for the financial crisis at the Nashoba Regional School District. In addition, when the Assistant Superintendent escorted Plaintiff off District property as outlined in Paragraphs 35-37, it was done in front of the public in a manner that suggested the Plaintiff engaged in criminal and unethical activity.

81.    At no time when any false statements or conduct implying criminal or unethical activity against Plaintiff was made did any of the Defendants clarify that the statements were untrue despite their knowledge to the contrary. In addition, at no time did any of the Defendants explain the truth that Plaintiff had been directed by Van Houten to utilize the accounting methods she was now publicly faulting the Plaintiff for using and that Plaintiff had, in fact, been the one who reported the

21

financial problems to both Van Houten; Carlos Llanso, the Chair of the School Committee; and the Budget Subcommittee.

82.    The communications of Defendants were made negligently, maliciously, and/or with knowledge that the statements were false or with reckless disregard for the truth.

83.    The communications of defendants were intended to injure Plaintiff's professional reputation and occupation.

84.    The false statements made by Defendants injured Plaintiff by impairing his reputation and standing in the community of accountants, state officials, and the public and thereby diminished his ability to earn a living in his chosen profession.

85.    The defamatory matter, communicated as mentioned, did cause, and was calculated to cause, great injury to plaintiff's reputation, in that Plaintiff has not been able to secure full-time, year round employment as an accountant and attempts have been made to force him out of his subsequent contractual relationship with the Commonwealth of Massachusetts because of the defamatory statements.

86.    Said statements served no legitimate purpose of the Defendants.

87.    Said statements have caused the Plaintiff to be held up to public ridicule and
humiliation, have interfered with his efforts to obtain other employment, and have
caused him great personal and professional embarrassment and shame, whereby
he has suffered special and general pecuniary loss and his good name and
character have been greatly injured.

## Count VI:

## Defamation by Melanson, Heath & Company

88.    The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through
87 of this Complaint as if fully restated herein.

89.    Melanson, Heath & Company was hired by Defendant School District to conduct
a financial audit of the District's finances and prepare a report for a sum of Sixty
Thousand Dollars ($60,000.00).

90.    While conducting the fiscal audit, John Sullivan, the Melanson, Health &
Company principal and accountant in charge of the audit disseminated many
public statements both at public meetings and to the press that Plaintiff had
engaged in questionable accounting practices while Plaintiff was employed with
the School District.

91.    Among the false statements made by John Sullivan were statements concerning
Plaintiffs job performance and included comments that the Plaintiff was to blame

for the District's financial crisis, statements that the Plaintiff engaged in unethical accounting practices, statements implicating that the Plaintiff had engaged in criminal activity, and statements implying that the Plaintiff was solely responsible for the financial crisis at the Nashoba Regional School District.

92.    These statements were intended to imply that Plaintiff had behaved unethically and criminally during his period of employment with the District.

93.    Melanson, Health and Company knew that when John Sullivan published these statements as an agent of Melanson, Heath & Company, that the statements were false. On information and belief, the same accounting practices that Melanson, Health & Company publicly called into question were accounting practices that Defendant Melanson, Health & Company had utilized and recommend to other Massachusetts School Districts and Municipalities in the past.

94.    At no time did Melanson, Heath & Company, or any of its agents or representatives, state or suggest that the accounting methods used by Plaintiff were, in fact, ethical, or that the statements made by John Sullivan were not true.

95.    Said publications by Melanson, Heath & Company were false.

96.   Defendant Melanson, Heath & Company, made the statements negligently, maliciously, and/or with knowledge that the statements were false or with reckless disregard for the truth.

97.   Said statements served no legitimate purpose of the Defendant.

98.   Said statements have caused the Plaintiff to be held up to public ridicule and humiliation, have interfered with his efforts to obtain other employment, and have caused him great personal and professional embarrassment and shame, whereby he has suffered special and general pecuniary loss and his good name and character have been greatly injured.

### Count VII:

### Civil Conspiracy to Commit Defamation

99.   The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 98 of this Complaint as if fully restated herein.

100.  On information and belief, Melanson, Heath and Company entered into a written contract for sixty thousand dollars ($60,000.00) to perform a fiscal audit of the School District's finances and produce a written report regarding the same.

101.    On information and belief, the District hired Melanson, Heath & Company to conduct the audit, make public statements and produce a report with the purpose of pointing the finger at Plaintiff.

102.    During the course of the investigation, Defendant Van Houten, Defendant School Committee members and John Sullivan of Defendant Melanson, Health & Company, negligently, recklessly, or wantonly made defamatory statements as outlined in Count V and Count VI above. The parties made these defamatory statements as a united front in several public meetings and to papers. Among the false and defamatory statements were statements concerning Plaintiffs job performance that included statements that the Plaintiff was to blame for the District's financial crisis, statements that the Plaintiff engaged in unethical accounting practices, statements inferring that the Plaintiff engaged in criminal activity, statements that the Plaintiff had forged signatures, and statements which implied that the Plaintiff was solely responsible for the financial crisis at the Nashoba Regional School District.

103.    Said publications by Defendants were false.

104.    At no time did any of the Defendants state or suggest that the statements were false. In addition, Melanson, Heath & Company never produced the report that they contracted for which may have exonerated the Plaintiff and/or implicated Van Houten and the School Committee members in the District's financial issues.

26

105.    Defendants made the statements negligently, maliciously, and/or with knowledge that the statements were false or with reckless disregard for the truth.

106.    Said statements served no legitimate purpose of the Defendant.

107.    Said statements have caused the Plaintiff to be held up to public ridicule and humiliation, have interfered with his efforts to obtain other employment, and have caused him great personal and professional embarrassment and shame, whereby he has suffered special and general pecuniary loss and his good name and character have been greatly injured.

### Count VIII:

### M.G.L. c. 12 Sections 11I, Civil Rights Violation Under State Law

108.    The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 107 of this Complaint as if fully restated herein.

109.    When the District requested and triggered a criminal investigation against the Plaintiff, Plaintiff enjoyed the constitutionally protected right to remain silent and be free from self-compelled incrimination.

110.    As a public employee, Plaintiff also had the right to a due process hearing to determine whether discipline should be imposed for his refusal to participate with the investigation in August and September of 2002.

111.    On August 16, 2002, Plaintiff was escorted off School District property and told that it was best if he and the school parted ways without receiving a due process hearing.

112.    In addition, the District stopped payment of his wages and earned but unused vacation time, without a due process hearing was a violation of Plaintiff's due process rights.

113.    Following the term of his anticipated employment, the District sought a Court Order compelling the complete abdication of the Plaintiff's rights to remain silent and be free from self-compelled incrimination. Plaintiff was forced to incur extensive legal fees for asserting his due process rights.

114.    These actions were taken in order to threaten, coerce, and intimidate Plaintiff into participating in an investigation without a grant of immunity that these statements would not be used in a subsequent criminal proceeding.

### Count IX:

### M.G.L. c. 214 §1B, Violation of the Right to Privacy

115.    The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 114 of this Complaint as if fully restated herein.

116.   Plaintiff was employed as a public employee and enjoyed a privacy interest in his personal information including his work evaluations, disciplinary documentation, promotion, demotion and termination information.

117.   On or around June 22, 2002, Plaintiff's contract was not renewed for the 2002-2003 school year.

118.   Van Houten, acting in her official capacity as Superintendent of Schools, made a public statement regarding his contract nonrenewal that included information about his qualifications and stated that his termination was due to his lack of qualifications to work as a business manager.

119.   In addition, after Van Houten and the School District came public with the financial crisis the Defendants took adverse employment action against the Defendant, including what the District has phrased as "discipline", "administrative leave" and/or "termination" at different times.

120.   When these actions were taken, Defendants disseminated private information concerning Plaintiff's job performance and included comments that the Plaintiff was to blame for the District's financial crisis, statements that the Plaintiff engaged in unethical accounting practices, statements inferring that the Plaintiff engaged in criminal activity, and statements which implied that the Plaintiff was solely responsible for the financial crisis at the Nashoba Regional School District.

121.    Moreover, Defendants maintained absolute silence and secrecy regarding the impeding fiscal crisis for approximately two months from the date on which the Plaintiff alerted the Defendants to the impeding crisis.

122.    This repeated and systemic interference with Plaintiff's privacy rights in his personal information was engaged in a manner that was unreasonable, substantial and serious.

123.    The Defendants could have handled the impending and actual fiscal crisis, as well as public statements regarding the reasons for the status of Plaintiff's employment, in a more reasonable manner that did not violate the privacy rights of the Plaintiff.

### Count X:

### Wrongful Termination in Violation of Public Policy

124.    The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 123 of this Complaint as if fully restated herein.

125.    Plaintiff was originally hired pursuant to an employment contract.

126.    Despite Plaintiff's requests, the contract was not renewed or renegotiated by either the Interim Superintendent or Van Houten.

127. On or about June 26, 2001, Plaintiff was working without an express employment agreement.

128. After the expiration of his employment contract, the employment relationship between the Plaintiff and the Defendants was at-will.

129. During the course of his employment, Plaintiff performed a number of tasks as directed and instructed by his superior, Van Houten.

130. On or about June 20, 2002, Plaintiff informed Carlos Llanso School Committee Chair, and the Committee's Budget Sub-Committee of the resultant pending fiscal crisis. Plaintiff provided this information because he was required to do so and he refused to further the cover-up scheme initiated and desired by Van Houten.

131. Plaintiff provided the information regarding the pending fiscal crisis because he believed he was performing an important public deed which would provide sufficient time for the Defendants to avoid a crisis at the start of the next school year.

132. When Plaintiff outed the pending fiscal crisis, he was falsely accused of unethical accounting practices, forgery, criminal activity, and made out to be the sole person responsible for the crisis. Not one person receiving the information on or about June 20, 2002 took any affirmative or positive action to avoid the crisis that

ensued months later and resulted in the separation of teachers and cancellation of school programs.

133.   In addition, Plaintiff later exercised his legal rights by remaining silent when asked to participate in an internal fiscal audit without being offered immunity for his statements as outlined in Count I of this Complaint.

134.   Subsequently, Plaintiff was terminated.

135.   Moreover, as a result of Plaintiff's performance of the important public deed, all people present for Plaintiff's critical report on or about June 20, 2002, permitted the systematic retaliation against the Plaintiff by Van Houten from the date that public disclosure was made in August 2002 through the present date.

136.   Said employment termination was a direct result of Plaintiff's performance of this public deed and/or his assertion of a legally guaranteed right.

## Count XI:

## In the Alternative, Breach of Contract

137.   The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 136 of this Complaint as if fully restated herein.

138.    Plaintiff was originally hired pursuant to an employment contract. Despite
        Plaintiff's requests, the contract was not renewed or renegotiated.

139.    On or about June 26, 2002, Plaintiff was working without an express employment
        agreement.

140.    On or about June 26, 2002, Van Houten provided a written offer of employment
        for a definite term requesting that Plaintiff stay his resignation until September
        13, 2002.

141.    That offer was accepted by the Plaintiff and he continued to work for the
        Defendant's after this June 26, 2002 date.

142.    Pursuant to the contract, the Defendants were obligated to compensate the
        Plaintiff through September 13, 2002.

143.    The failure to provide compensation through September 13, 2002 constitutes a
        breach of the terms of the contract as described in Van Houten's letter of
        September 26, 2002.

**WHEREFORE,** plaintiff requests judgment against defendants and prays:

1.   That this Court award the Plaintiff damages in an amount to be determined by a jury for violations of Plaintiffs' due process rights guaranteed by the Fifth and Fourteenth amendments under 29 U.S.C. §1983;

2.   That this Court award the Plaintiff an amount of approximately $3,000.00, the actual wages withheld in violation of 29 USC § 201, *et. seq.* and M.G.L. c. 140, Sec. 148;

3.   That this Court award treble damages and attorney's fees for actual wages and earned vacation time withheld in violation of M.G.L. c. 140, §148;

4.   That this Court award the Plaintiff compensatory and punitive damages;

5.   That this Court grant attorney's fees and any other costs of this action; and

6.   That this Court award the Plaintiff such other and further relief as this court may deem just and proper.

**Demand for Jury Trial**

The Plaintiff respectfully requests a trial by jury in this matter.

Respectfully submitted,

ANDREW PAQUETTE

By his attorneys


*Melissa E. Mason Shea*
Melissa E. Mason Shea, Esq.
BBO No.: 564693
SULLIVAN, HAYES & QUINN
One Monarch Place – Suite 1200
Springfield, MA 01144-1200
Tel. (413) 736-4538
Fax (413) 731-8206
E-mail: lawoffice@sullivanandhayes.com

Dated this 21st day of June, 2005.

## VERIFICATION

I, Andrew Paquette, declare that I have read this Complaint and know its contents. The contents are true to my knowledge except as to those matters that are alleged on information and belief; as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this ___ day of June, 2005 in Worcester County, Massachusetts.

_____
Andrew Paquette

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                          June _____, 2005

On this ___ day of June, 2005, before me, the undersigned notary public, personally appeared Andrew Paquette, proved to me through satisfactory evidence of identification, to be the person whose name is signed on this document, and who affirmed to me that the contents of the preceding document are truthful and accurate to the best of his knowledge and belief.

_____
Signature of Notary Public

_____
Name of Notary printed, typed or stamped

Notary Public, State of: _____

My Commission Expires: _____

LESLIE ANN LINCOLN
Notary Public
Commonwealth of Massachusetts
My Commission Expires May 21, 2010

36



THE COMMONWEALTH OF MASSACHUSETTS
OFFICE OF THE ATTORNEY GENERAL
WESTERN MASSACHUSETTS DIVISION
1350 MAIN STREET
SPRINGFIELD, MASSACHUSETTS 01103-1629

TOM REILLY
ATTORNEY GENERAL

(413) 784-1240
www.ago.state.ma.us

December 9, 2002

Andrew Paquette
c/o Megan B. Sullivan, Esq.
SULLIVAN & HAYES
One Monarch Place, Suite 1200
Springfield, MA 01144-1200

### Re:  Authorization for Immediate Private Suit   Nashoba Regional School District

Dear Mr. Paquette:

Thank you for contacting the Office of the Attorney General's Fair Labor and Business Practices Division.

This letter is to inform you that we have carefully reviewed your complaint and have determined that the proper resolution of this matter may be through a private suit in civil court. Accordingly, we are authorizing you to pursue this matter through a civil lawsuit immediately.

Massachusetts General Laws chapter 149, § 150, and chapter 151, §§ 1B and 20 establish a private right of action for employees who believe they are victims of certain violations of the state wage laws.  If you elect to sue in civil court, you may bring an action on your own behalf and others similarly situated, and you may obtain injunctive relief, treble damages for any loss of wages and other benefits, as well as the costs of litigation and reasonable attorneys' fees.

Without making a judgment on the merits of your complaint, this correspondence represents this office's written assent to sue and grants you the authority to pursue this matter against your employers immediately, as permitted by Massachusetts General Laws chapters 149 and 151.  This office will not take further enforcement action at this time.

Thank you for your attention to this matter.

Sincerely,

Susan R. Decker

Susan R. Decker, Inspector
Office of the Attorney General
Fair Labor and Business Practices Division

05-40099

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Paquette, Andrew

**DEFENDANTS**

Nashoba Regional School District, Melanson, Heath and Co., et. al
(Please See Attachment for Additional Defendants)

**(b)** County of Residence of First Listed Plaintiff    Worcester County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Worcester County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

SULLIVAN, HAYES & QUINN, One Monarch Place - Suite 1200, Springfield, MA 01144-1200 - (413) 736-4538

Attorneys (If Known)

James A. Toomey, Esq. (Please See Attachment for Address)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C. Sec. 1983 and 29 U.S.C. 201, et. seq.

Brief description of cause:
5th & 14th Amendments, Wage & Hour claims under Federal & State law, (Please See Attachment)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)    JUDGE      DOCKET NUMBER

DATE
06/21/2005

SIGNATURE OF ATTORNEY OF RECORD
*Melissa E. Mason Shea*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**05-40099 FDS**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)_____
   Andrew Paquette v. Nashoba Regional School District, et. al

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

   [ ] I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   [✓] II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
             740 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases

   [ ] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   [ ] IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   [ ] V.    150, 152, 153.

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                  YES [ ]      NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

                                                  YES [ ]      NO [✓]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                  YES [ ]      NO [✓]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                  YES [✓]      NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                  YES [✓]      NO [ ]

   A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [ ]       Central Division [✓]       Western Division [ ]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [ ]       Central Division [ ]        Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                  YES [ ]      NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Melissa E. Mason Shea, Esq.,  SULLIVAN, HAYES & QUINN
ADDRESS   One Monarch Place - Suite 1200, Springfield, MA 01144-1200
TELEPHONE NO.   (413) 736-4538

(CategoryForm.wpd - 5/2/05)

## CIVIL COVER SHEET (Continued)

I.  **ADDITIONAL DEFENDANTS:**

**Johanna Van Houten Riley**, in her official capacity as the former Superintendent for the Nashoba Regional School District and in her individual capacity; and
**Carlos Llanso,**
**Anne Kingan,**
**Alice Roemer,**
**Mary Beth Yentz,**
**Linda Weatherbee,**
**Adam Tocci,**
**Jeanne Wyand,**
**Nancy Fleming**, in their official capacities as former members of the Nashoba Regional School Committee and in their individual capacities.

**ATTORNEYS (IF KNOWN):**

James A. Toomey, Esq.
Murphy, Hesse, Toomey & Lehane, LLP
Crown Colony Plaza
300 Crown Colony Drive, Suite 410
P.O. Box 9126
Quincy, MA 02269-9126

VI.  **CAUSE OF ACTION:**

Breach of Contract
Defamation
Wrongful Termination
Civil Conspiracy