## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
### CENTRAL DIVISION

| | | |
|---|---|---|
| ANDREW PAQUETTE, | ) | CIVIL RIGHTS COMPLAINT |
| PLAINTIFF, | ) | 42 U.S.C. §1983 |
| | ) | |
| V. | ) | CIVIL NO. <u>05-40099FDS</u> |
| | ) | |
| NASHOBA REGIONAL SCHOOL | ) | |
| DISTRICT; | ) | |
| MELANSON, HEATH AND COMPANY; | ) | |
| JOHANNA VAN HOUTEN RILEY, in her | ) | |
| official capacity as the former | ) | |
| Superintendent for the Nashoba Regional | ) | |
| School District and in her individual | ) | |
| capacity; and | ) | **FIRST AMENDED VERIFIED** |
| | ) | **COMPLAINT** |
| CARLOS LLANSO, | ) | |
| ANNE KINGAN, | ) | **JURY DEMAND** |
| ALICE ROEMER, | ) | |
| MARY BETH YENTZ, | ) | |
| LINDA WEATHERBEE, | ) | |
| ADAM TOCCI, | ) | |
| JEANNE WYAND, | ) | |
| NANCY FLEMING, in their official | ) | |
| capacities as former members | ) | |
| of the Nashoba Regional School Committee | ) | |
| and in their individual capacities, | ) | |
| DEFENDANTS. | ) | |

## NATURE OF THE CASE

This is an action by a former public employee against the Nashoba Regional School District (hereinafter "the District") in Massachusetts, former members of the Nashoba Regional School Committee, (hereinafter "the School Committee), the former Superintendent of the Nashoba Regional School District, Johanna Van Houten Riley (hereinafter "Van Houten"), and accounting Firm Melanson, Health & Company, alleging claims under 42 U.S.C. §1983; 29 U.S.C. § 201, *et. seq.*; the Massachusetts Fair

Employment Practices Act, M.G.L. c. 149, § 148; the Massachusetts Privacy Statute, M.G.L. c. 214, §1B; the Massachusetts Civil Rights Statute, M.G.L. c. 12, §11I, wrongful termination, defamation, civil conspiracy, breach of contract and intentional infliction of emotional distress.

## JURISDICTION

1.     The District Court of Massachusetts has jurisdiction over the claims asserted in this complaint pursuant to 29 U.S.C. §1331 and §42 U.S.C. §1983.  Jurisdiction is also conferred and authorized by 29 U.S.C. §201, *et. seq.*

2.     Venue is proper in the District Court of Massachusetts under 28 U.S.C. § 1391(b) because Defendants reside in the District.  Venue is also proper in the District of Massachusetts pursuant to 28 U.S.C. §1391(b) because all the events giving rise to this action occurred in this District.

## PARTIES

3.     Plaintiff, Andrew Paquette, is a citizen of the Commonwealth of Massachusetts presently residing at 21 Homestead Ave, Auburn, Commonwealth of Massachusetts.

4.     Defendant, Nashoba Regional School District, is a regional school district in the Commonwealth of Massachusetts organized under chapter 71 of the General Laws of Massachusetts by the Towns of Bolton, Stow, and Lancaster to provide

public education to the children of these towns.  The offices of the School District are located at 50 Mechanic Street, Bolton, Massachusetts.

5.     Defendant, Johanna Van Houten Riley, the former Superintendent of the Nashoba Regional School District, is currently a citizen of Massachusetts and Principal at Westport High School with a place of business at Westport High School, 19 Main Road Westport, MA 02790.  Defendant Johanna Van Houten Riley was employed as the Superintendent of the Nashoba Regional School District and acting under the authority and color of state law at the time the alleged incidents occurred.

6.     Defendant Carlos Llanso, is currently a citizen of Massachusetts residing at 119 Moffett Street, Lancaster, MA 01523.  Defendant Llanso was the former Chair of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

7.     Defendant Anne Kingan, is currently a citizen of Massachusetts residing at 120 West Berlin Road, Bolton, Massachusetts 01740.  Defendant Kingan was the former Vice Chair of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

8.     Defendant Alice Roemer, is currently a citizen of Massachusetts residing at 185 Main Street, Bolton, Massachusetts 01740.  Defendant Roemer was the former

Treasurer of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

9.      Defendant Mary Beth Yentz, is currently a citizen of Massachusetts residing at 19 Johnny Appleseed Lane, Lancaster, Massachusetts 01523.  Defendant Yetz was a former member of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

10.     Defendant Linda Weatherbee, is currently a citizen of Massachusetts residing at 441 Neck Road, Lancaster, Massachusetts 01523.  Defendant Weatherbee was a former member of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

11.     Defendants Adam Tocci, is currently a citizen of Massachusetts residing at 15 Deacon Benham Road, Stow, Massachusetts 01775.  Defendant Tocci was a former member of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

12.     Defendant Jeanne Wyand, is currently a citizen of Massachusetts residing at 113 Maple Street, Stow, Massachusetts 01775.  Defendant Wyand was a former member of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

13.     Defendant Nancy Fleming, is currently a citizen of Massachusetts residing at 26 Dunster Drive, Stow, Massachusetts 01775.  Defendant Fleming was a former member of the Nashoba Regional School Committee and acting under the authority and color of state law when the alleged incidents occurred.

14.     Defendant, Melanson, Heath and Co., P.C., is a Massachusetts accounting firm with a corporate headquarters located at Massachusetts at 51 Davis Street Greenfield, MA 01301.

## FACTS

15.     In August 1999, the District hired Plaintiff to serve as its Director of Finance and Operations.  At the time of hire, Plaintiff agreed that he would provide detailed financial information detailing every line item in the budget and the balances in an "Expenditure Detail Report."

16.     Upon information and belief, in the fall of 2000, the Nashoba Regional School Committee hired Van Houten as the new Superintendent of Public Schools for the District.  Van Houten has an M.B.A. in finance from Boston College and she indicated during her interview for the position that this financial background would allow her to turn around the District's financial problems which predated both Plaintiff and herself.

17.     As the new Superintendent of Public Schools, Van Houten was Plaintiff's immediate supervisor.

18.     Upon her hire, Van Houten informed Plaintiff that he was to begin reporting the budget to the School Committee on an EXCEL Spreadsheet called a "Result of Operations Report" rather than the pre-existing reports generated from the financial accounting system, called a "Expenditure Detail Report".  This new "Result of Operations Report" was presented to the School Committee on a monthly basis and summarized the Expenditure Detail Report.  In addition, when negative balances showed up on the EXCEL spreadsheet, Van Houten had the Plaintiff change them.

19.     Moreover, at the time of her hire, Van Houten advised the School Committee to change the level of scrutiny that the School Committee exercised over the District's financials.

20.     On information and belief, the School Committee agreed to refrain from receiving the detailed Expenditure Detail Report and instead approved the use of the "Results of Operations" report.

21.     While employed as the Director of Operations and Finance and while working under the supervision of Van Houten, Plaintiff apprised Van Houten of the

District's finances.  Plaintiff did not disclose detailed information to the School Committee as expressly directed by Van Houten.

22.    On several occasions during her tenure as Superintendent, Van Houten personally instructed Plaintiff on the manner in which he should alter the District's financial reports.

23.    The District had a long history of financial problems.  In the fall of 2000, Plaintiff and Van Houten jointly discovered the failure of the former SPED Director to properly budget for out-of-district special education tuitions.  Throughout his tenure, Plaintiff alerted Van Houten to the District's budget problems, including accelerated construction project spending.  Periodically Plaintiff would ask for the budget to be frozen.  In the Spring of 2002, Plaintiff alerted Van Houten to the fact that the District was facing an a deficit estimated at over one million dollar ($1,000,000.00).

24.    Plaintiff requested that for the remainder of the school year a "spending freeze" be issued.

25.    Despite the fact that Van Houten issued a written "spending freeze" as requested by Plaintiff, Van Houten continued to authorize approximately one million dollars ($1,000,000.00) in expenditures that fiscal year.  She directed that Plaintiff sign off on these authorizations and assured Plaintiff that the budget would not be over

expended.  Eventually, because of the fiscal crisis Plaintiff attempted to refuse altogether to authorize any further expenditure and there were approximately 150 purchase orders that Plaintiff did not sign or process. The School Committee also authorized spending after the issued "spending freeze."

26.    Plaintiff detailed the growing, multi-million dollar deficit to Van Houten and the Chair of the School Committee, Carlos Llanso, in a closed meeting prior to the close of the fiscal year in June of 2002.

27.    The same day in which Plaintiff detailed the multi-million dollar deficit to Van Houten and the School Committee chair, he explained the situation with the Districts' financial issues at a Budget Sub-Committee meeting.  At this meeting, members of the School Committee expressed outrage and accused the Plaintiff of criminal activity.  Both Van Houten and Llanso failed to intervene on the attack against Plaintiff.

28.    On information and belief, the Budget Sub-Committee took no minutes at that meeting, despite an affirmative obligation to do so.  Jeanne Wyand, the budget Sub-Committee chair was responsible for taking minutes at budget sub-committee meeting, which were maintained for meetings on an uneven and sporadic basis.

29.    On or about June 20, 2002, in a letter to Van Houten, Plaintiff submitted his resignation.  In a June 22, 2002 follow-up e-mail to Van Houten, Plaintiff stated

that he was willing to rescind his resignation if Van Houten wanted to discuss the issues in detail.

30.    Van Houten accepted Plaintiff's resignation on or about June 26, 2002 by letter. However, Van Houten also thanked the Plaintiff for his loyalty and service to the District and explained she did not wish for Plaintiff to immediately resign, requesting he stay his position until September 13, 2002.

31.    Plaintiff accepted the offer of continued employment and agreed to stay at his position until September 13, 2002 as Van Houten had requested.

32.    There was no further action or discussion about Plaintiffs employment situation until August of 2002.

33.    During a period in early to mid-August when Plaintiff was out of the country on vacation, Van Houten and Alice Roemer publicly claimed they "discovered" an extensive budget deficit.  Van Houten suggested she had no previous knowledge of the true financial picture of the District.  She placed the blame for the deficit solely on Plaintiff. The District also hired the independent auditing firm, Melanson, Heath and Company, P.C., to audit the District's finances.    Plaintiff did not start learning of these facts until on or about August 16, 2002.

34. Because of the June meetings with the Superintendent, the Chair of the School Committee, the Budget Sub-Committee, as well as, other Committee members had actual knowledge that the Superintendent's public statements were false. At no time did these individuals request that Van Houten refrain from making public statements with the implication that Plaintiff engaged in criminal activity and that he alone bore responsibility for the District's financial problems.

35. When Plaintiff returned from vacation on August 16, 2002, he met with Van Houten. Van Houten asked Plaintiff to return the School District's property and told him it would be "in the best interest of the District and you if we ended our relationship effective immediately." Van Houten offered to continue Plaintiff's pay and compensation for a three-week period through September 13, 2002 and write him a letter of recommendation.. She did not expressly state to him the status of his employment at that time. Later, she publicly claimed he was on "administrative leave."

36. At this meeting, Van Houten also told Plaintiff that the District hired forensic accountants Melanson, Heath & Company to review the District's financial records and asked for Plaintiff's help in the investigation. Van Houten and the School Committee Members did not make Plaintiff aware that there was a criminal investigation or that she contacted criminal authorities. In fact, Van Houten stated that the District had only contacted Melanson, Heath & Company.

At that time the only criminal investigation Plaintiff knew about was a prior District Attorney investigation from years before.

37.    After this meeting, Plaintiff was escorted from the property by the Assistant Superintendent in view of the public on the direction of Van Houten.

38.    On or about August 19, 2002, Plaintiff spoke with Melanson, Heath & Company accountants to help in their internal audit of the financial records as Van Houten requested.  Van Houten, as well as the District and the School Committee, failed to inform Plaintiff that a criminal investigation had been convened regarding the District's finances at the time he helped with the internal audit.

39.    In late August 2002, Plaintiff read a *Worcester Telegram & Gazette* article wherein he learned that the District had called the authorities and initiated a criminal investigation.  According to that article, Van Houten and Alice Roemer, the District Treasurer, publicly claimed that they had spotted irregularities in the District's books eleven (11) days earlier while reviewing the District's books.

40.    At no time did Van Houten, Roemer, or other members of the School Committee disclose that Plaintiff had disclosed the financial crisis to Van Houten, Carlos Llanso, and the Budget Subcommittee in June.

41.     At no time, either before or after the internal audit, did Van Houten, the District, or the School Committee Members offer to protect any of the Plaintiffs statements from being used in a later criminal proceeding or inform Plaintiff of his right to protect himself from self-incrimination.

42.     After the financial situation of the School District became public, Van Houten continually addressed the School Committee in meetings attended by hundreds of people.  The general theme conveyed by Superintendent Van Houten was that Plaintiff engaged in misconduct and that she was not aware of this misconduct with the implication that Plaintiff engaged in criminal wrongdoing.

43.     On or about August 30, 2002, the District approached Plaintiff regarding assistance with the financial audit a second time. In the letter from the Superintendent, Plaintiff was accused of failing to appear at a meeting.

44.     As Plaintiff was now aware of the pending criminal investigation, he requested that he receive questions in advance and be allowed to consult with an attorney at any subsequent meetings.  Van Houten refused these request.  Moreover, neither Van Houten nor the District offered Plaintiff a grant of immunity from the use of information he gave in the forensic audit.

45.    In a written letter to Plaintiff on September 11, 2002, Van Houten threatened to impose discipline against Plaintiff for what she stated was his failure to cooperate with the District's fiscal investigation.

46.    Because Van Houten's written threats were a violation of his federal and state constitutional and statutory rights, Plaintiff did not participate in the forensic review. Moreover, Plaintiff's experience with Melanson, Heath & Company, the firm hired to conduct the forensic audit, was negative and Plaintiff did not trust Melanson, Health & Company.

47.    As threatened, the District imposed discipline when it withheld Plaintiff's compensation for the month of September.  In a letter dated September 16, 2002 by the School District's attorney, which requested Plaintiffs' continued cooperation with the financial audit, it was stated that "the region is reserving any payments to Mr. Paquette pending his response."  In fact, the District actually caused an electronic withdrawal of the wages paid to Plaintiff from the Plaintiff's personal bank account.

48.    The District withheld both wages and earned and unused vacation time from the Plaintiff.

49.    On or about this same time, Van Houten drafted a multi-paged memo to the public wherein she placed exclusive blame for the fiscal crisis on Plaintiff.  In

said diatribe, she mentioned Plaintiff thirty-two (32) times and implied that he was the sole blame for the District's financial crisis, despite her knowledge that this was not the truth.

50.    Van Houten made repeated, public accusations that Plaintiff was at fault for the fiscal crisis at public meetings held after the fiscal crisis was disclosed.  She stated that Plaintiff was at fault and implied the Plaintiff was at fault for the crisis in the presence of both the School Committee and members of the public.  In addition, during said public meetings, Van Houten expressed her ignorance of the fiscal crisis.

51.    From the date in which the financial issues of the District went public, the Defendants made, and continued to make, false statements regarding the Plaintiff and his involvement in the financial problems of the school.  Public statements were made both at public meetings and to the press both in their individual capacities and while they were acting in their official capacities as School Committee members.  False statements included comments that the Plaintiff was to blame for the District's financial crisis, comments that the Plaintiff engaged in unethical accounting practices, comments that the plaintiff engaged in criminal activity, comments that the Plaintiff forged signatures, and comments that the Plaintiff was solely responsible for the financial crisis at Nashoba regional schools.

52.     At all times, Defendants knew that the statements made to the public regarding Plaintiffs involvement were false and, despite Plaintiff's September 25, 2002 letter to the District's attorney requesting that the Defendants retract their statements, they have failed to do so.

53.     As a result of the facts contained herein, Van Houten's contract for employment was not renewed by the Defendants and the Chair of the School Committee did not seek reelection.

54.     Plaintiff alleges that his constitutional rights, privileges or immunities have been violated and that the District unlawfully withheld Plaintiff's compensation and wages and that the aforementioned facts form the basis for the allegations:

### Count I:

### Violation of Fifth Amendment Right to Be Free From Self-Incrimination Under 42 U.S.C. §1983

55.     The Plaintiff repeats and realleges his allegations set forth at Paragraphs 1 through 54 of this Complaint as if fully restated herein.

56.     At no time when the District requested that Plaintiff participate in the internal forensic investigation did the District, Van Houten acting in her official capacity, or the School Committee members acting in their official capacity, inform Plaintiff that if he participated in the internal financial investigation he would be

15

immune from having any statements used against him in a subsequent or ongoing criminal investigation.

57.    Defendants attempted to leverage their position as Plaintiff's employer by forcing him to provide self-incriminating information or face discipline while employed. At no time did the Defendants offer Plaintiff immunity for statements made in the course of the internal investigation. This violated Plaintiff's Fifth Amendment right to protection against self-incrimination.

58.    When the Defendants "disciplined" Plaintiff by failing to provide him earned compensation it was discipline for Plaintiff's refusal to answer questions pursuant to an internal investigation without offering him immunity from having these statements be used against him in a subsequent or on-going criminal investigation. This violated Plaintiff's Fifth Amendment right to protection against self-incrimination.

59.    Moreover, in September of 2002, the Nashoba Regional School District filed a Civil Action in Massachusetts State Court against Plaintiff seeking the right to circumvent Plaintiff's constitutional protections and compel his sworn testimony in the internal audit. At all relevant times, the criminal investigations requested by and initiated by this public entity remained on-going. At no time did the School District indicate or offer that if Plaintiff answered questions that he would be immune from having any statements used against him in the pending criminal

investigation.  This coercion violated Plaintiff's Fifth Amendment right to protection against self-incrimination.


## Count II:

## Fourteenth Amendment Deprivation of Property and Liberty Interest under 42 U.S.C. §1983

60.    The Plaintiff repeats and realleges his allegations set forth at Paragraphs 1 through 59 of this Complaint as if fully restated herein.


61.    Plaintiff was a public employee with a property interest in continued employment through September 13, 2002.  He also had a property interest in his earned and unused wages from September 1, 2002 to September 13, 2002.


62.    The public statements made by the Defendants outlined in paragraphs 1 to 54, as well as, Counts V , VI, and VII of this complaint are false.


63.    These statements made by the Defendants seriously damage Plaintiff's standing and associations in his community and place his good name, reputation, honor, and integrity at stake.


64.    The stigmatizing statements and charges were made formally by Defendants in their official capacities as represeantives and/or agents of the School District and

were intentionally publicized at public meetings and to newspapers that report to the public.

65. The stigmatizing statements were made in conjunction with a series of adverse employment actions being taken against the Plaintiff. For example, the Plaintiff's was escorted off the District's property and told by Van Houten that it was best if the District and he parted ways without being told the status of his employment at that time. Plaintiff was also disciplined in his employment via the District's failure to pay him wages through September 13, 2002 and his termination, despite the District's prior offer that he would remain employed with the District until September 13, 2002, which he accepted.

66. Despite letters requesting information regarding the nature of his employment and the actions taken, Plaintiff was not allowed an opportunity to review the reasons and evidence for the planned termination, or the deprivation of wages nor was he allowed to present his position before any final action was taken against him. This violated his rights to not be deprived of property interest without due process.

67. In addition, the District failed to comply with the employee's request for an adequate name-clearing opportunity as requested in the September 25, 2002 letter to the School District's attorney.

68.    As a result of their failure to provide Plaintiff with an adequate name clearing hearing, the Plaintiff was deprived of his liberty interest in continued employment and wages until September 13, 2002.

## Count III:

## Violation of Fair Labor Standards Act, 29 U.S.C. §201, et. seq.

69.    The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 68 of this Complaint as if fully restated herein.

70.    Defendants failed to pay the Plaintiff the wages due him free and clear during the period of September 1, 2002 to September 13, 2002.  Said wages due and owing were in the amount of approximately $3,000.00.

71.    The Defendant's failure to compensate Plaintiff for the period of September 1, 2002 to September 13, 2003 was willful.  Willfulness is evidenced by Van Houten's letter dated September 11, 2002 stating that the Plaintiff's failure to cooperate with the fiscal audit would result in "discipline" and by the District's electronic withdrawal of these wages from Plaintiff's personal bank account. Moreover, willfulness is evidenced by the letter sent by the School District's attorney, dated September 16, 2002, stating that the "Region is reserving any payments [to Plaintiff] pending his response [in the investigation]".

72.    As a result of said actions, the Plaintiff suffered damages.

## Count IV:

## Violation of Massachusetts Wage and Hour Laws

73.     The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 72 of this Complaint as if fully restated herein.

74.     When Defendants withheld Plaintiffs' compensation and vacation pay they committed a per se violation of M.G.L. c. 149, § 148.

75.     The Defendants intentionally withheld the earned but unused vacation pay for several weeks and provided the earned but unused vacation pay only after receiving a demand letter from Plaintiff's counsel. Plaintiff has not received the compensation due him for the pay period from September 1, 2002 to September 13, 2002.

76.     On December 9, 2002, the Plaintiff received a right to sue letter on his M.G.L. c. 149, § 148 claim from the Massachusetts Attorney General pursuant to M.G.L. c. 149, § 150; M.G.L. c. 151, §§. 1B and 20.

77.     The Right to sue letter grants Plaintiff Andrew Paquette the right to sue for attorney's fees and treble damages pursuant to M.G.L. c. 149, § 150.

## Count V:

## Defamation Against the District, Van Houten and School Committee Members

78.     The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through

77 of this Complaint as if fully restated herein.

79.     The Plaintiff was employed as Director of Finance and operations for the Nashoba

Regional School District From 1999 to 2002.  Throughout his employment with

the District, Plaintiff developed a reputation for the highest standards of honesty

and integrity, has served his employers and the community as a responsible,

reliable, and law-abiding person, and has thereby enjoyed and values the good

opinion, respect, confidence, and esteem of his employers, coworkers, friends,

and residents of the community in which he lives and works.

80.     After the District's financial situation was disclosed to the public, Defendants

knowingly prepared and asserted many false statements to the public imputing

Plaintiff's character and reputation by blaming him for the District's financial

problems.  These statements include false statements concerning Plaintiff's job

performance and included false statements that the Plaintiff was to blame for the

District's financial crisis, false statements that the Plaintiff engaged in unethical

accounting practices, false statements that the Plaintiff engaged in criminal

activity, false statements that the Plaintiff forged signatures, and false statements

that the Plaintiff was solely responsible for the financial crisis at the Nashoba

Regional School District.  In addition, when the Assistant Superintendent escorted

Plaintiff off District property as outlined in Paragraphs 35-37, it was done in front of the public in a manner that suggested the Plaintiff engaged in criminal and unethical activity.

81.    At no time when any false statements or conduct implying criminal or unethical activity against Plaintiff was made did any of the Defendants clarify that the statements were untrue despite their knowledge to the contrary.  In addition, at no time did any of the Defendants explain the truth that Plaintiff had been directed by Van Houten to utilize the accounting methods she was now publicly faulting the Plaintiff for using and that Plaintiff had, in fact, been the one who reported the financial problems to both Van Houten; Carlos Llanso, the Chair of the School Committee; and the Budget Subcommittee.

82.    The communications of Defendants were made negligently, maliciously, and/or with knowledge that the statements were false or with reckless disregard for the truth.

83.    The communications of defendants were intended to injure Plaintiff's professional reputation and occupation.

84.    The false statements made by Defendants injured Plaintiff by impairing his reputation and standing in the community of accountants, state officials, and the public and thereby diminished his ability to earn a living in his chosen profession.

85.   The defamatory matter, communicated as mentioned, did cause, and was calculated to cause, great injury to plaintiff's reputation, in that Plaintiff has not been able to secure full-time, year round employment as an accountant and attempts have been made to force him out of his subsequent contractual relationship with the Commonwealth of Massachusetts because of the defamatory statements.

86.   Said statements served no legitimate purpose of the Defendants.

87.   Said statements have caused the Plaintiff to be held up to public ridicule and humiliation, have interfered with his efforts to obtain other employment, and have caused him great personal and professional embarrassment and shame, whereby he has suffered special and general pecuniary loss, emotional distress and his good name and character have been greatly injured.

### Count VI:

### Defamation by Melanson,  Heath & Company

88.   The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 87 of this Complaint as if fully restated herein.

89.   Melanson, Heath & Company was hired by Defendant School District to conduct a financial audit of the District's finances and prepare a report for a sum of Sixty Thousand Dollars ($60,000.00).

90.    While conducting the fiscal audit, John Sullivan, the Melanson, Health & Company principal and accountant in charge of the audit disseminated many public statements both at public meetings and to the press that Plaintiff had engaged in questionable accounting practices while Plaintiff was employed with the School District.

91.    Among the false statements made by John Sullivan were statements concerning Plaintiffs job performance and included comments that the Plaintiff was to blame for the District's financial crisis, statements that the Plaintiff engaged in unethical accounting practices, statements implicating that the Plaintiff had engaged in criminal activity, and statements implying that the Plaintiff was solely responsible for the financial crisis at the Nashoba Regional School District.

92.    These statements were intended to imply that Plaintiff had behaved unethically and criminally during his period of employment with the District.

93.    Melanson, Health and Company knew that when John Sullivan published these statements as an agent of Melanson, Heath & Company, that the statements were false.  On information and belief, the same accounting practices that Melanson, Health & Company publicly called into question were accounting practices that Defendant Melanson, Health & Company had utilized and recommend to other Massachusetts School Districts and Municipalities in the past.

94.     At no time did Melanson, Heath & Company, or any of its agents or representatives, state or suggest that the accounting methods used by Plaintiff were, in fact, ethical, or that the statements made by John Sullivan were not true.

95.     Said publications by Melanson, Heath & Company were false.

96.     Defendant Melanson, Heath & Company, made the statements negligently, maliciously, and/or with knowledge that the statements were false or with reckless disregard for the truth.

97.     Said statements served no legitimate purpose of the Defendant.

98.     Said statements have caused the Plaintiff to be held up to public ridicule and humiliation, have interfered with his efforts to obtain other employment, and have caused him great personal and professional embarrassment and shame, whereby he has suffered special and general pecuniary loss, emotional distress and his good name and character have been greatly injured.

## **Count VII:**

## **Civil Conspiracy to Commit Defamation**

99.     The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 98 of this Complaint as if fully restated herein.

100.    On information and belief, Melanson, Heath and Company entered into a written contract for sixty thousand dollars ($60,000.00) to perform a fiscal audit of the School District's finances and produce a written report regarding the same.

101.    On information and belief, the District hired Melanson, Heath & Company to conduct the audit, make public statements and produce a report with the purpose of pointing the finger at Plaintiff.

102.    During the course of the investigation, Defendant Van Houten, Defendant School Committee members and John Sullivan of Defendant Melanson, Health & Company, negligently, recklessly, or wantonly made defamatory statements as outlined in Count V and Count VI above.  The parties made these defamatory statements as a united front in several public meetings and to papers.   Among the false and defamatory statements were statements concerning Plaintiffs job performance that included statements that the Plaintiff was to blame for the District's financial crisis, statements that the Plaintiff engaged in unethical accounting practices, statements inferring that the Plaintiff engaged in criminal activity, statements that the Plaintiff had forged signatures, and statements which implied that the Plaintiff was solely responsible for the financial crisis at the Nashoba Regional School District.

103.    Said publications by Defendants were false.

104.    At no time did any of the Defendants state or suggest that the statements were false.  In addition, Melanson, Heath & Company never produced the report that they contracted for which may have exonerated the Plaintiff and/or implicated Van Houten and the School Committee members in the District's financial issues.

105.    Defendants made the statements negligently, maliciously, and/or with knowledge that the statements were false or with reckless disregard for the truth.

106.    Said statements served no legitimate purpose of the Defendant.

107.    Said statements have caused the Plaintiff to be held up to public ridicule and humiliation, have interfered with his efforts to obtain other employment, and have caused him great personal and professional embarrassment and shame and emotional distress, whereby he has suffered special and general pecuniary loss and his good name and character have been greatly injured.

### Count VIII:

### M.G.L. c. 12 Sections 11I, Civil Rights Violation Under State Law

108.    The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 107 of this Complaint as if fully restated herein.

109.    When the District requested and triggered a criminal investigation against the Plaintiff, Plaintiff enjoyed the constitutionally protected right to remain silent and be free from self-compelled incrimination.

110.    As a public employee, Plaintiff also had the right to a due process hearing to determine whether discipline should be imposed for his refusal to participate with the investigation in August and September of 2002.

111.    On August 16, 2002, Plaintiff was escorted off School District property and told that it was best if he and the school parted ways without receiving a due process hearing.

112.    In addition, the District stopped payment of his wages and earned but unused vacation time, without a due process hearing was a violation of Plaintiff's due process rights.

113.    Following the term of his anticipated employment, the District sought a Court Order compelling the complete abdication of the Plaintiff's rights to remain silent and be free from self-compelled incrimination. Plaintiff was forced to incur extensive legal fees for asserting his due process rights.

114.   These actions were taken in order to threaten, coerce, and intimidate Plaintiff into

participating in an investigation without a grant of immunity that these statements

would not be used in a subsequent criminal proceeding.


**Count IX:**

**M.G.L. c. 214  §1B, Violation of the Right to Privacy**

115.   The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through

114 of this Complaint as if fully restated herein.


116.   Plaintiff was employed as a public employee and enjoyed a privacy interest in his

personal information including his work evaluations, disciplinary documentation,

promotion, demotion and termination information.


117.   On or around June 22, 2002, Plaintiff's contract was not renewed for the 2002-

2003 school year.


118.   Van Houten, acting in her official capacity as Superintendent of Schools, made a

public statement regarding his contract nonrenewal that included information

about his qualifications and stated that his termination was due to his lack of

qualifications to work as a business manager.


119.   In addition, after Van Houten and the School District came public with the

financial crisis the Defendants took adverse employment action against the

Defendant, including what the District has phrased as "discipline", "administrative leave" and/or "termination" at different times.

120. When these actions were taken, Defendants disseminated private information concerning Plaintiff's job performance and included comments that the Plaintiff was to blame for the District's financial crisis, statements that the Plaintiff engaged in unethical accounting practices, statements inferring that the Plaintiff engaged in criminal activity, and statements which implied that the Plaintiff was solely responsible for the financial crisis at the Nashoba Regional School District.

121. Moreover, Defendants maintained absolute silence and secrecy regarding the impeding fiscal crisis for approximately two months from the date on which the Plaintiff alerted the Defendants to the impeding crisis.

122. This repeated and systemic interference with Plaintiff's privacy rights in his personal information was engaged in a manner that was unreasonable, substantial and serious.

123. The Defendants could have handled the impending and actual fiscal crisis, as well as public statements regarding the reasons for the status of Plaintiff's employment, in a more reasonable manner that did not violate the privacy rights of the Plaintiff.

## Count X:

### Wrongful Termination in Violation of Public Policy

124.    The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through

123 of this Complaint as if fully restated herein.


125.    Plaintiff was originally hired pursuant to an employment contract.


126.    Despite Plaintiff's requests, the contract was not renewed or renegotiated by either

the Interim Superintendent or Van Houten.


127.    On or about June 26, 2001, Plaintiff was working without an express employment

agreement.


128.    After the expiration of his employment contract, the employment relationship

between the Plaintiff and the Defendants was at-will.


129.    During the course of his employment, Plaintiff performed a number of tasks as

directed and instructed by his superior, Van Houten.


130.    On or about June 20, 2002, Plaintiff informed Carlos Llanso School Committee

Chair, and the Committee's Budget Sub-Committee of the resultant pending fiscal

crisis.  Plaintiff provided this information because he was required to do so and he

refused to further the cover-up scheme initiated and desired by Van Houten.

131.    Plaintiff provided the information regarding the pending fiscal crisis because he believed he was performing an important public deed which would provide sufficient time for the Defendants to avoid a crisis at the start of the next school year.

132.    When Plaintiff outed the pending fiscal crisis, he was falsely accused of unethical accounting practices, forgery, criminal activity, and made out to be the sole person responsible for the crisis.  Not one person receiving the information on or about June 20, 2002 took any affirmative or positive action to avoid the crisis that ensued months later and resulted in the separation of teachers and cancellation of school programs.

133.    In addition, Plaintiff later exercised his legal rights by remaining silent when asked to participate in an internal fiscal audit without being offered immunity for his statements as outlined in Count I of this Complaint.

134.    Subsequently, Plaintiff was terminated.

135.    Moreover, as a result of Plaintiff's performance of the important public deed, all people present for Plaintiff's critical report on or about June 20, 2002, permitted the systematic retaliation against the Plaintiff by Van Houten from the date that public disclosure was made in August 2002 through the present date.

136.    Said employment termination was a direct result of Plaintiff's performance of this public deed and/or his assertion of a legally guaranteed right.

## **Count XI:**

## **In the Alternative, Breach of Contract**

137.    The Plaintiff repeats and realleges his allegations set forth at paragraphs 1 through 136 of this Complaint as if fully restated herein.

138.    Plaintiff was originally hired pursuant to an employment contract. Despite Plaintiff's requests, the contract was not renewed or renegotiated.

139.    On or about June 26, 2002, Plaintiff was working without an express employment agreement.

140.    On or about June 26, 2002, Van Houten provided a written offer of employment for a definite term requesting that Plaintiff stay his resignation until September 13, 2002.

141.    That offer was accepted by the Plaintiff and he continued to work for the Defendant's after this June 26, 2002 date.

142.    Pursuant to the contract, the Defendants were obligated to compensate the Plaintiff through September 13, 2002.

143. The failure to provide compensation through September 13, 2002 constitutes a breach of the terms of the contract as described in Van Houten's letter of September 26, 2002.


## COUNT XII

### Intentional Infliction of Emotional Distress

144. The Plaintiff repeats and re-alleges his allegations set forth at paragraphs 1 through 143 of this Complaint as if fully restated herein.


145. The Defendants intended to inflict emotional distress or knew or should have known that emotional distress was likely to result from their conduct.


146. The Defendants' conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community.


147. The Defendants' conduct caused plaintiff's emotional distress.


148. The emotional distress suffered was severe and of a nature that no reasonable person could be expected to endure it.

**WHEREFORE,** plaintiff requests judgment against defendants and prays:

1.    That this Court award the Plaintiff damages in an amount to be determined by a jury for violations of Plaintiffs' due process rights guaranteed by the Fifth and Fourteenth amendments under 29 U.S.C. §1983;

2.    That this Court award the Plaintiff an amount of approximately $3,000.00, the actual wages withheld in violation of 29 USC § 201, *et. seq.* and M.G.L. c. 140, Sec. 148;

3.    That this Court award treble damages and attorney's fees for actual wages and earned vacation time withheld in violation of M.G.L. c. 140, §148;

4.    That this Court award the Plaintiff compensatory and punitive damages in an amount to be determined by a jury;

5.    That this Court award the Plaintiff emotional distress damages in an amount to be determined by a jury;

6.    That this Court grant attorney's fees and any other costs of this action; and

7.    That this Court award the Plaintiff such other and further relief as this court may deem just and proper.

### Demand for Jury Trial

The Plaintiff respectfully requests a trial by jury in this matter.

Respectfully submitted,

ANDREW PAQUETTE

By his attorneys


/s/ Melissa E. Mason Shea
Melissa E. Mason Shea, Esq.
BBO No.: 564693
SULLIVAN, HAYES & QUINN
One Monarch Place – Suite 1200
Springfield, MA 01144-1200
Tel. (413) 736-4538
Fax (413) 731-8206
E-mail: lawoffice@sullivanandhayes.com

Dated this 25th day of July, 2005.

**VERIFICATION**

I, Andrew Paquette, declare that I have read this First Amended Verified Complaint and know its contents. The contents are true to my knowledge except as to those matters that are alleged on information and belief; as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this 25th day of July, 2005 in Hampden County, Massachusetts.

/s/ Andrew Paquette
Andrew Paquette

**COMMONWEALTH OF MASSACHUSETTS**

HAMPDEN, ss.                                                    July 25, 2005

On this 25th day of July, 2005, before me, the undersigned notary public, personally appeared Andrew Paquette, proved to me through satisfactory evidence of identification, to be the person whose name is signed on this document, and who affirmed to me that the contents of the preceding document are truthful and accurate to the best of his knowledge and belief.

/s/ Linda J. Rivera
Signature of Notary Public


Name of Notary printed, typed or stamped

Notary Public, State of:_____

My Commission Expires: _____

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2005, I electronically filed the Plaintiffs' First Amended Verified Complaint with the Clerk of Court using the CM/ECF system which will send notification of such filing and I hereby certify that on July 25, 2005, I mailed by United States Postal Service, the document to the following non-registered participants:

Nashoba Regional School District
50 Mechanic Street
Bolton, MA 01740
ATTN: Mr. Michael Wood,
      Superintendent

Anne 'Nancy' C. Fleming
26 Dunster Dr.
Stow, MA 01775

Melanson, Heath and Company, P.C.
51 Davis Street
Greenfield, MA 01301
ATTN: Ms. Patrice Squillante,
      Representative

Johanna Van Houten Riley
1 Neds Point Road
Mattapoisett, MA 02739

Carlos Llanso
119 Moffett Street
Lancaster, MA 01523

Anne Kingan
120 West Berlin Road
Bolton, MA 01740

Jeanne Wyand
113 Maple Street
Stow, MA 01775

Adam Tocci
15 Deacon Benham Rd
Stow, MA 01775

Linda Weatherbee
441 Neck Rd.
Lancaster, MA 01523

Ms. Mary Beth Yentz
19 Johnny Appleseed Lan
Lancaster, MA 01523

Mary A(lice) Roemer
185 Main Street
Bolton, MA 01740

/s/ Melissa E. Mason Shea
Melissa E. Mason Shea, Esq.