UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| ANDREW PAQUETTE, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-40099FDS |
| ) | |
| NASHOBA REGIONAL SCHOOL ) | |
| DISTRICT; MELANSON, HEATH AND ) | |
| COMPANY; JOHANNA VAN HOUTEN ) | |
| RILEY, in her official capacity as the former ) | |
| Superintendent for the Nashoba Regional School ) | |
| District and in her individual capacity; and ) | |
| CARLOS LLANSO, ANNE KINGAN, ALICE ) | |
| ROEMER, MARY BETH YENTZ, LINDA ) | |
| WEATHERBEE, ADAM TOCCI, JEANNE ) | |
| WYLAND, NANCY FLEMING, in their official ) | |
| capacities as former members of the Nashoba ) | |
| Regional School Committee and in their ) | |
| individual capacities, ) | |
|     Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE
DEFENDANT, MELANSON, HEATH & COMPANY, P.C., TO DISMISS
COUNTS VI, VII AND XII OF THE PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT OR, IN THE ALTERNATIVE, FOR A
<u>MORE DEFINITE STATEMENT</u>**

The defendant, Melanson, Heath & Company, P.C., submits this memorandum of

law in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, to dismiss Counts VI, VII, and XII[1] of the First Amended Verified Complaint of

the plaintiff, Andrew Paquette, for failure to state a claim upon which relief can be granted.

---

[1] As discussed in greater detail *infra*, although the wording of the various counts contained in the Complaint is vague and ambiguous, it appears that Counts VI, VII and XII are the only causes of action directed at Melanson, Heath & Company in this litigation. To the extent any additional claims against this defendant are asserted in the other counts, this motion also seeks dismissal of those claims or, in the alternative, a more definite statement.

In the alternative, the defendant moves to compel the plaintiff to provide a more definite

statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

## INTRODUCTION

According to the plaintiff's First Amended Verified Complaint ("Complaint"),

Andrew Paquette was hired as the Director of Finance and Operations for the Nashoba

Regional School District ("the District") in August, 1999.  See Plaintiff's Complaint ¶ 15.[2]

One year later, Johanna Van Houten Riley was retained as the District's Superintendent of

Schools.  Id. ¶ 16.  Shortly after Ms. Van Houten was hired, Mr. Paquette alleges that she

instructed him to generate financial reports for the Nashoba Regional School Committee

("School Committee") that were less detailed than those created during his first year of

employment.  Id. ¶¶ 18-20.  In addition, Mr. Paquette claims that "on several occasions…

Van Houten personally instructed Plaintiff on the manner in which he should alter the

District's financial reports."  Id. ¶ 22.

In the Spring of 2002, the plaintiff allegedly informed Ms. Van Houten that the

District was facing a one million dollar deficit.  Id. ¶ 23.  While Ms. Van Houten ordered a

"spending freeze," the plaintiff alleges that she ultimately authorized another one million

dollars in expenditures for that fiscal year, often forcing the plaintiff to sign off on them.  Id.

¶ 24.  The plaintiff claims that when he "detailed the growing, multi-million dollar deficit" at

a Budget Sub-Committee meeting in June, 2002, "members of the School Committee

expressed outrage and accused the Plaintiff of criminal activity."  Id. ¶ 27.  As a result of this

---

[2] Various factual allegations contained in the Complaint are referenced herein and assumed as true for purposes of this motion only.  MHC otherwise reserves the right to contest all such allegations.

meeting, the plaintiff submitted his resignation on June 20, 2002. Id. ¶ 29. Ms. Van Houten

allegedly asked Mr. Paquette to remain until September 13, 2002, and he agreed. Id.

According to the Complaint, in "early to mid-August when Plaintiff was out of the

country on vacation," Ms. Van Houten and Alice Roemer, the District Treasurer, "publicly

claimed they 'discovered' an extensive budget deficit." Id. ¶ 33. According to Mr. Paquette,

Ms. Van Houten claimed to have no prior knowledge of the deficit and placed blame "solely

on Plaintiff." Id. Around that time, the plaintiff contends that the District contacted

Melanson, Heath & Company, P.C. ("MHC"), an independent accounting firm, about

conducting a review of the District's financial situation. Id. Shortly thereafter, Ms. Van

Houten told the plaintiff that it would be "in the best interest of the District and you if we

ended our relationship effective immediately." Id. ¶ 35. Ms. Van Houten also allegedly told

the plaintiff that he had to assist and cooperate with MHC's review. Id. ¶ 38. On or about

August 19, 2002, Mr. Paquette and MHC held preliminary discussions about the budget

deficit. Id. By his own admission, however, Mr. Paquette thereafter refused to cooperate

with MHC and did not otherwise participate in the forensic review of the District's finances,

allegedly because some prior unrelated "experience" with MHC was "negative." Id. ¶ 46.

Independent of the review that MHC was hired to conduct, in "late August, 2002,"

the plaintiff alleges that he "read a *Worcester Telegram & Gazette* article wherein he learned that

the District had called the authorities and initiated a criminal investigation." Id. ¶ 39.

According to the article, "Van Houten and Alice Roemer, the District Treasurer, publicly

claimed that they had spotted irregularities in the District's books eleven (11) days earlier."

Id. Additionally, when addressing the budget deficit at School Committee meetings, Ms.

Van Houten allegedly "conveyed" a "general theme" that "Plaintiff engaged in misconduct"
and "criminal wrongdoing." Id. ¶ 42. As a result of these comments, Mr. Paquette believed
that he was the subject of a criminal investigation with respect to the deficit. Id. ¶¶ 44, 46.
On September 11, 2002, Ms. Van Houten purportedly wrote a letter to the plaintiff
threatening to "impose discipline…for…his failure to cooperate with the District's fiscal
investigation." Id. ¶ 45. Shortly thereafter, the District "withheld Plaintiff's compensation
for the month of September." Id. ¶ 47. Additionally, Ms. Van Houten allegedly "made
repeated, public accusations that Plaintiff was at fault for the fiscal crisis at public meetings."
Id. ¶ 50.

Nowhere in the Complaint does the plaintiff attribute any *specific* comments or
statements to MHC or its employees. Indeed, paragraph 91 of the Complaint, listing the
vague assertions allegedly made by MHC, is nearly an identical copy of paragraphs 51 and
80, which attribute these same vague and insufficient assertions to different parties.[3] The
only significant distinction between these paragraphs is Mr. Paquette's *reassignment* of the
ambiguous remarks from "the Defendants" in paragraphs 51 and 80, to John Sullivan, an
accountant with MHC, in paragraph 91. Despite this obvious insufficiency, Counts VI and
VII of the plaintiff's Complaint nonetheless charge MHC with defamation and civil
conspiracy to commit defamation, respectively. According to Mr. Paquette, John Sullivan
"disseminated many public statements both at public meetings and to the press that Plaintiff
had engaged in questionable accounting practices while Plaintiff was employed with the
School District." Id. ¶ 90. Again regurgitating the same language that was used to assert

---

[3] As discussed in note 7 *infra*, the plaintiff's use of the term "the Defendants" throughout the Complaint indicates that the term *does not include* MHC.

claims against the co-defendants, the plaintiff then accuses Mr. Sullivan of making "false statements" that Mr. Paquette was to blame for the District's financial crisis, engaged in unethical accounting practices, engaged in criminal conduct, and was solely responsible for the District's financial crisis. Id. ¶ 91.

In complete disregard of the basic requirements for pleading defamation claims in federal court, the plaintiff offers absolutely no support for these vague allegations. Mr. Paquette provides no evidence of *what* specific statements were made by MHC, *when* these statements were made, *where* copies, if any, of such statements can be located, or *how* MHC engaged in any civil conspiracy to commit defamation. In addition, while Mr. Paquette asserts that MHC's actions caused him "emotional distress," there is no trace of support throughout the Complaint to substantiate his assertion in Count XII that the alleged emotional distress was inflicted intentionally.[4] Accordingly, MHC respectfully requests that Counts VI, VII and XII of Mr. Paquette's Complaint be dismissed for failure to state a claim. In the alternative, MHC requests that this Court order the plaintiff to provide a more definite statement to enable MHC to adequately frame a responsive pleading.[5]

## ARGUMENT

### I.     THE RULE 12(b)(6) & RULE 12(e) STANDARDS.

In determining whether a complaint fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must

---

[4] The plaintiff also alleges that he suffered "special" pecuniary loss as a result of MHC's alleged conduct. See Plaintiff's Complaint ¶¶ 98, 107. As the plaintiff should be aware, "When items of special damage are claimed, they shall be specifically stated." Fed. R. Civ. P. 9(g). This is yet another example of a deficiency plaguing the plaintiff's Complaint.
[5] Should this Court deny MHC's motion to dismiss pursuant to Rule 12(b)(6) and allow MHC's motion for a more definite statement pursuant to Rule 12(e), MHC reserves its right to seek a dismissal pursuant to Rule 12 after receipt of the more definite pleading.

accept as true all *well-pleaded* factual allegations in the plaintiff's Complaint and must draw all *reasonable* inferences in favor of the plaintiff. See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994); Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987). Conversely, the Court need not and should not indulge the plaintiff's "reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." Chongris, 811 F.2d at 37; Remco Distrib. Inc. v. Oreck Corp., 814 F. Supp. 171, 174 (D.Mass. 1992).

Rule 12(e) provides in pertinent part that, "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Use of such a motion is proper even where a complaint evidences all the necessary elements of a claim. Acciavatti v. Prof'l Servs. Group, Inc., 982 F. Supp. 69, 77-78 (D.Mass. 1997). As with motions pursuant to Rule 12(b)(6), a more definite statement should be required where a pleading simply relies upon blanket assertions and unsupportable conclusions. Chongris, 811 F.2d at 37; Remco, 814 F. Supp. at 174.

**II.    THE PLAINTIFF'S DEFAMATION CLAIM SHOULD BE DISMISSED BECAUSE THE PLAINTIFF NEITHER IDENTIFIES ANY PRECISE DEFAMATORY LANGUAGE NOR SUFFICIENTLY DESCRIBES WHEN OR WHERE ANY DEFAMATORY COMMUNICATIONS WERE MADE.**

**1.      Requirements for Pleading Defamation.**

Both the U.S. Court of Appeals for the First Circuit and the U.S. District Court for the District of Massachusetts have repeatedly recognized that defamation claims are disfavored under the law and that the burden for proving such claims is arduous. Phantom Touring, Inc. v. Affiliated Publ'ns, 953 F.2d 724, 728-29 (1st Cir. 1992); Stanton v. Metro Corp., 357 F. Supp. 2d 369, 383 (D.Mass. 2005); Kibbe v. Potter, 196 F. Supp. 2d 48, 74

(D.Mass. 2002); <u>Acciavatti</u>, 982 F. Supp. at 77-78.  While the strict pleading requirements for

defamation claims prescribed by the Massachusetts Supreme Judicial Court and the

Massachusetts Rules of Civil Procedure do not control actions brought in federal court, the

prevailing view of the federal pleading requirements for defamation is that:

> Although special pleading requirements have not been set out in the federal rules for
> libel and slander actions, the standard for successfully pleading defamation tends to
> be more stringent than that applicable to most other substantive claims because of
> the historically unfavored nature of this type of action, the First Amendment
> implications of many of these cases, and the desire to discourage what some believe
> to be all too frequently vexatious litigation.  Thus, many of the somewhat inhibiting
> traditional attitudes toward pleading in the context of defamation have survived the
> adoption of the federal rules.

5 Wright & Miller, FEDERAL PRACTICE & PROCEDURE §1245.  Thus, federal courts have

long performed a more meticulous review when analyzing the sufficiency of defamation

pleadings.  <u>Id.</u> (and cases cited therein).

In evaluating the adequacy of defamation pleadings in the First Circuit, the U.S.

Court of Appeals has held that, "***a defendant is entitled to knowledge of the <u>precise</u>***

***<u>language challenged as defamatory</u>***."  <u>Phantom Touring</u>, 953 F.2d at 728 n. 6 (emphasis

added).  This specifically comports with the well-established pleading requirement that a

complaint "set forth factual allegations, either direct or inferential, respecting each material

element necessary to sustain recovery under some actionable legal theory."  <u>Gooley v. Mobil

Oil Corp.</u>, 851 F.2d 513, 515 (1st Cir. 1988).  Adhering to these standards in the context of

Rule 12 motions, the U.S. District Court has held that a defamation claim is "factually

deficient" where it "fail[s] to describe any relevant communication(s) by Defendants,

whether superficially defamatory or not."  <u>Acciavatti</u>, 982 F. Supp. at 77 (Defamation claim

dismissed where "complainant has altogether omitted one or some of [the] elements from

the complaint"); <u>see</u> <u>Fickes v. Sun Expert, Inc.</u>, 762 F. Supp. 998, 1002 (D.Mass. 1991)

(Failure to plead publisher of a defamatory statement is "sufficient grounds" for granting

Rule 12(e) motion). Thus, in accordance with the general pleading requirements of Rule 8,

both the First Circuit and the District Court have recognized that a claim for defamation

must identify precise language or sufficiently describe defamatory communications in order

to survive a Rule 12(b)(6) or Rule 12(e) motion.

> **2.    Grounds for Dismissing the Plaintiff's Defamation Claim.**

Mr. Paquette has inadequately pleaded his claim for defamation in accordance with

the law of this jurisdiction. As a threshold matter, Mr. Paquette has offered absolutely no

information about "the precise language challenged as defamatory." <u>Phantom Touring</u>, 953

F.2d at 728 n. 6; <u>see</u> <u>Bleau v. Greater Lynn Mental Health & Retardation Assoc.</u>, 371 F.

Supp. 2d 1, 2 (D. Mass. 2005) (acknowledging that <u>Phantom Touring</u> "can be construed to

reflect a heightened pleading standard"). Other than providing vague accusations about a

wide range of non-descript statements allegedly made by John Sullivan, accusations upon

which this Court should not rely when considering this motion, the Complaint contains no

specific language or other evidence of defamation. <u>Chongris</u>, 811 F.2d at 37; <u>Remco</u>, 814 F.

Supp. at 174. Indeed, although the "Facts" section of the plaintiff's Complaint identifies and

attributes certain precise statements to the co-defendants, no such precise statements are

attributed to John Sullivan or any other representative of MHC.

Similarly, the plaintiff has provided no information about *when* such statements were made, other than his general assertion that they came "at public meetings."[6] In addition, while the plaintiff asserts that defamatory statements were made "to the press," the only publication cited in the Complaint is a "Worcester Telegram & Gazette article" from "late August 2002" which, according to the plaintiff, contains statements from "Van Houten and Alice Roemer, the District Treasurer." See Plaintiff's Complaint ¶ 39. Neither the article nor its date of publication is provided, and nowhere in the Complaint does the plaintiff contend that this "late August 2002" article contains any statement(s) by MHC. Id. Thus, not only is MHC without any indication as to *what* it allegedly said, but it is unaware *when* the statement was made or *where* a copy, if any, of the statement can be located. Based on these and other significant defects,[7] the plaintiff has failed to properly plead a claim for defamation. Accordingly, Count VI of the plaintiff's Complaint should be dismissed or, in the alternative, a more definite statement should be provided so MHC can frame a response.

---

[6] As the plaintiff notes throughout his Complaint, however, *numerous* public meetings were held about the District's financial crisis. See, e.g., Plaintiff's Complaint ¶ 102. Indeed, such meetings had already taken place prior to the District's retention of MHC. Id. ¶¶ 26-27, 34.

[7] As indicated in notes 1 and 3 *supra*, although the wording of the Complaint is ambiguous, only Counts VI and VII appear to assert claims against MHC. Out of an abundance of caution, MHC has also responded to Count XII because the plaintiff alleges to have suffered emotional distress from the allegations contained in Counts VI and VII. See Plaintiff's Complaint ¶¶ 98, 107. All other counts in the Complaint identify "the Defendants," but the paragraphs contained in those counts make no reference to MHC. Further, the substance of those counts concern claims and disputes that could not apply to MHC. See, e.g., Plaintiff's Complaint ¶ 58 (Count I: "*The Defendants* 'disciplined' Plaintiff by failing to provide him earned compensation;" MHC was not the plaintiff's employer and could not discipline him by withholding compensation); ¶ 74 (Count IV: "*Defendants* withheld Plaintiffs' compensation and vacation pay;" MHC was not the plaintiff's employer and could not withhold compensation or vacation pay); ¶ 119 (Count IX: "*The Defendants* took adverse employment action against" the plaintiff; MHC was not the plaintiff's employer and could not take adverse employment action against him); ¶ 128 (Count X: "The employment relationship between the Plaintiff and *the Defendants* was at will;" MHC never shared an employment relationship with the plaintiff); ¶ 141 (Count XI: The plaintiff "continued to work for *the Defendants*;" the plaintiff never worked for MHC). Thus, while MHC is one of eleven defendants named in this case, it does not appear to be one of "the Defendants" as that term is used in the Complaint. To the extent that this ambiguous method of pleading was intended to assert other claims against MHC, each claim should be dismissed for failing to satisfy the basic pleading requirements of this Court.

Not only does the law of this district support the dismissal of the plaintiff's defamation claim for its copious inadequacies, but so too does the overwhelming majority of law from other jurisdictions.  See, e.g., Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986) (In pleading an action for defamation, "The allegations of the complaint must afford defendant sufficient notice of the communications complained of to enable him to defend himself"); Asay v. Hallmark Cards, Inc., 594 F.2d 692, 699 (8th Cir. 1979) ("The use of *In haec verba* pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings); Veilleux v. Nat'l Broad. Co., 8 F. Supp. 2d. 23, 35-36 (D.Me. 1998) (noting that "Federal pleading rules require that plaintiffs alleging libel or slander must set forth the precise language alleged to be defamatory; thus the defendant is provided with information necessary to defend"); Decker v. Vt. Educ. Television, Inc., 13 F. Supp. 2d 569, 574 (D.Vt. 1998) (granting motion for more definite statement because defamation claim "contain[ed] little more than conclusory accusations" and "fail[ed] to identify even generally the communications, or to whom they were communicated"); Murray v. Gencorp, Inc., 979 F. Supp. 1045, 1051 (E.D.Pa. 1997) (granting motion for more definite statement where complaint "does not provide what the alleged defamatory statements were nor by whom or to whom they were made"); Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F. Supp. 1303, 1314 (N.D.Cal. 1997) (dismissing complaint which "contains only general allegations of the defamatory statements and does not identify the substance of what was stated by the Defendants"); Ford v. Clement, 834 F. Supp. 72, 78 (S.D.N.Y. 1993) (dismissing defamation claim pursuant to Kelly, *supra*, 806 F.2d at 46).

III.    **THE PLAINTIFF'S CLAIM FOR CIVIL CONSPIRACY TO COMMIT DEFAMATION SHOULD BE DISMISSED BECAUSE THE PLAINTIFF (1) FAILS TO ASSERT A VIABLE DEFAMATION CLAIM, (2) FAILS TO IDENTIFY ANY HEIGHTENED FORM OF COERCION, AND (3) OFFERS NO FACTS SUPPORTING THE EXISTENCE OR PURPOSE OF THE CONSPIRACY OR OTHER UNLAWFUL CONDUCT.**

1.    **Requirements for Pleading Civil Conspiracy.**

Both the First Circuit and the District Court recognize that "Civil conspiracy is a **very limited** cause of action in Massachusetts." Carroll v. Xerox Corp., 294 F.3d 231, 243 (1st Cir. 2002); Kibbe, 196 F. Supp. 2d at 76; Jurgens v. Abraham, 616 F. Supp. 1381, 1386 (D.Mass. 1985). Indeed, conspiracy allegations "**must be pleaded with reasonable certainty and definiteness so as to inform the opposing party of the nature of the conspiracy charged.**" NRC Credit Corp. v. Underground Camera, Inc., 581 F. Supp. 609, 611 (D.Mass. 1984) (emphasis added). To state a viable claim for civil conspiracy, Mr. Paquette must allege that MHC and the co-defendants, "acting in unison, had some *peculiar power* of coercion over him that they would not have had if acting independently." Carroll, 294 F.3d at 243 (internal citations omitted) (emphasis added). Additionally, Mr. Paquette must prove that there was "a common design or an agreement…between two or more persons to do a wrongful act" or to "accomplish a lawful purpose by unlawful means." Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994); Kibbe, 196 F. Supp. 2d at 76. Finally, the plaintiff must prove that an unlawful or tortious act occurred. Kibbe, 196 F. Supp. 2d at 76.

2.    **Grounds for Dismissing the Plaintiff's Civil Conspiracy Claim.**

As a threshold matter, the plaintiff's civil conspiracy claim is fatally deficient because the plaintiff has failed to assert a viable claim against MHC for defamation, discussed *supra*.

This Court has previously held that "without any viable tort claim against [the defendant], there can be no civil conspiracy." <u>Kibbe</u>, 196 F. Supp. 2d at 76. Thus, a dismissal of the plaintiff's defamation claim must also result in the dismissal of the plaintiff's claim for civil conspiracy to commit defamation. Should this Court order the plaintiff to provide a more definite defamation claim, the civil conspiracy allegation should still be dismissed because of the thoroughly deficient manner in which this claim's other elements have been pleaded.

Mr. Paquette's Complaint does not allege sufficient facts to show that MHC and the co-defendants, acting together, were able to exert a heightened form of coercion over him. <u>Carroll</u>, 294 F.3d at 243. Indeed, to sustain a civil conspiracy cause of action, "***there must at least be some facts describing the existence and purpose of the cabal.***" <u>Kibbe</u>, 196 F. Supp. 2d at 76. Mr. Paquette simply alleges that "the District hired [MHC] to conduct the audit, make public statements and produce a report with the purpose of pointing the finger at Plaintiff." <u>See</u> Plaintiff's Complaint ¶ 101. Mr. Paquette also claims that MHC and its co-defendants "made these [unidentified] defamatory statements as a united front in several public meetings and to papers." <u>Id.</u> ¶ 102. None of these allegations provide any indication that MHC and the co-defendants enjoyed a "peculiar power of coercion" over the plaintiff, nor do they sufficiently describe the "existence and purpose of the cabal." <u>Carroll</u>, 294 F.3d at 243 (Affirming dismissal of civil conspiracy claim where plaintiff "alleged simply that 'the power of the individual defendants as a group was greater than the power of any one of them'"); <u>Kibbe</u>, 196 F. Supp. 2d at 76 (Dismissing civil conspiracy claim where plaintiff "at best" stated in an affidavit that "[Plaintiffs] conspired together to defame me, intimidate me, inflict severe emotional distress upon me, injure my reputation [and] prevent my harmonious

and continued employment"); <u>Jurgens</u>, 515 F. Supp. at 1386 (Dismissing civil conspiracy claim where plaintiff failed to allege any coercive power).  Accordingly, the plaintiff's failure to properly plead this element of conspiracy provides yet another justification for dismissal.

 A final, additional deficiency in the plaintiff's conspiracy claim requiring its dismissal lies with the plaintiff's failure to provide any evidence to support his conclusory assertions of the existence of an agreement between MHC and its co-defendants to commit a wrongful act or, for that matter, a lawful act in an unlawful manner.  <u>Aetna</u>, 43 F.3d at 1564; <u>Kibbe</u>, 196 F. Supp. 2d at 76.  It is well-established in the First Circuit that "complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts."  <u>Slotnick v. Staviskey</u>, 560 F.2d 31, 33 (1st Cir. 1977).  Here, the plaintiff merely insinuates that MHC and its co-defendants committed a wrongful act or a lawful act in an unlawful manner with his unsupported, conclusory statement that the District hired MHC "with the purpose of pointing the finger at Plaintiff."  Such a blanket accusation and unsupportable conclusion is insufficiency under settled precedent to state a claim upon which relief can be granted, thereby warranting dismissal of the claim.  <u>Chongris</u>, 811 F.2d at 37; <u>Slotnick</u>, 560 F. 2d at 33 (Affirming dismissal of conspiracy claim because "courts need not conjure up unpleaded facts to support [plaintiff's] conclusory suggestions"); <u>Prudential Ins. Co. of America v. Turner & Newhall, PLC</u>, 1988 WL 150491, *10 (D.Mass. 1988) (Dismissing conspiracy claim because "[t]he plaintiff's amended complaint is starkly devoid of any allegations with respect to [the] elements [of conspiracy] and, as such, fails to state a claim for conspiracy under Massachusetts law"); <u>Putnam v. Adams Communication Corp.</u>, 1987 WL 13262, *8-9

(D.Mass. 1987) (Dismissing conspiracy claim "where the allegations of conspiracy add

nothing to the underlying tort allegations"); <u>NRC Credit Corp.</u>, 581 F. Supp. at 611-12

(Dismissing conspiracy claim where allegations "do not circumstantially prove any of the

essential elements" of the tort).

**IV.    THE PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS SHOULD BE DISMISSED BECAUSE THE
PLAINTIFF'S AMENDED COMPLAINT SIMPLY PARROTS THE
ELEMENTS OF THE TORT AND DOES NOT ALLEGE ANY
<u>EXTREME OR OUTRAGEOUS CONDUCT ON THE PART OF MHC</u>.**

**1.    Requirements for Pleading Intentional Infliction of Emotional Distress.**

The plaintiff does not specifically allege that MHC intentionally inflicted emotional

distress upon him.  Nevertheless, Mr. Paquette does allege that MHC's alleged defamation

and civil conspiracy to commit defamation caused him to suffer emotional distress.[8]  <u>See</u>

Plaintiff's Complaint ¶¶ 98, 107.  Thus, in an excess of caution, this motion addresses the

cause of action for intentional infliction of emotional distress.

In Massachusetts, the tort of intentional infliction of emotional distress requires:

> (1) That the actor intended to inflict emotional distress or that he knew or should
> have known that emotional distress was the likely result of [the] conduct; (2) that
> the conduct was extreme and outrageous, was beyond all possible bounds of
> decency and was utterly intolerable in a civilized community; (3) that the actions of
> the defendant were the cause of the plaintiff's distress; and (4) that the emotional
> distress sustained by the plaintiff was severe and of a nature that no reasonable
> [person] could be expected to endure it.

<u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 195 (1st Cir. 1996) (quoting <u>Agis v. Howard Johnson</u>

<u>Co.</u>, 371 Mass. 140 (1976)).

---

[8] During the Local Rule 7.1 conference between counsel, Mr. Paquette's attorneys also indicated that an emotional
distress claim was being asserted against MHC, although the undersigned had not yet received a copy of the plaintiff's
amended pleading at the time of the conversation.

"The standard for making a claim of intentional infliction of emotional distress is

**very high** in order to avoid litigation in situations where only bad manners and mere hurt

feelings are involved." Id. (emphasis added); Heinrich v. Sweet, 49 F. Supp. 2d 27, 39

(D.Mass. 1999) ("Given the ephemeral nature of the purported harm, courts have *narrowly*

*construe* the tort") (emphasis added); Lamanque v. Mass. Dept. of Employ't & Training, 3 F.

Supp. 2d 83, 94 (D.Mass. 1998) (noting the "*substantial burden*" on plaintiffs under this tort)

(citing Foley v. Polaroid Corp., 400 Mass. 82 (1987)).  Of relevance to this case, the U.S.

Court of Appeals for the First Circuit has held, and other courts and authorities have agreed:

> A principal bulwark against excessively broad recovery is the requirement that the
> defendant must have engaged in "extreme and outrageous" conduct….Thus, liability
> cannot be predicated upon "mere insults, indignities, threats, annoyances, petty
> oppressions, or other trivialities," nor even is it enough "that the defendant has acted
> with  an intent which is tortious or even criminal, or that he has intended to inflict
> emotional distress, or even that his conduct has been characterized by 'malice' or a
> degree of aggravation which would entitle the plaintiff to punitive damages for
> another tort;" rather, "liability has been found only where the conduct has been so
> outrageous in character, and so extreme in degree, as to go beyond all possible
> bounds of decency, and to be regarded as atrocious, and utterly intolerable in a
> civilized community.

Doyle, 103 F.3d at 195; Gouin v. Gouin, 249 F. Supp. 2d 62, 73 (D.Mass. 2003); Foley, 400

Mass. at 99; Restatement (2d) of Torts §46, Comment d.  For these reasons, a claim for

intentional infliction of emotional distress will be dismissed where, as here, a "plaintiff's

complaint *parrots* the requisite elements of the claim but *lacks factual support for his wholly*

*conclusory allegations*." Kurker v. Hill, 44 Mass. App. Ct. 184, 193 (1998) (emphasis added); see

Chongris, 811 F.2d at 37; Remco, 814 F. Supp. at 174.

    **2.**    **Grounds for Dismissing the Plaintiff's Claim for Intentional Infliction of Emotional Distress.**

Despite going through the effort of amending the Complaint to add this claim, the plaintiff did not bother even to attempt to satisfy the pleading requirements for this narrow and disfavored tort. Even the most cursory review of Count XII demonstrates that after realleging the allegations set forth in the prior 143 paragraphs, the plaintiff's cause of action for intentional infliction of emotional distress simply contains four paragraphs, each of which *parrots* one of the tort's four elements. Indeed, the plaintiff does not even *attempt* to provide factual support for his bald assertions. Thus, dismissal of Count XII is warranted based on the utter deficiency of the plaintiff's pleading alone. Id.

Moreover, reviewing the Complaint in its entirety highlights the futility of this claim. The Verified Amended Complaint is devoid of allegations against MHC that would remotely rise to the level of "extreme and outrageous" conduct "beyond all possible bounds of decency" that is "utterly intolerable in a civilized community." Doyle, 103 F.3d at 195. Given the deserved scrutiny that this cause of action requires, the deficiencies in the plaintiff's pleading warrant the dismissal of the claim. Gouin, 249 F. Supp. 2d at 78 (Dismissing claim for intentional infliction of emotional distress because estranged husband's "criminal conduct" toward wife, including violating restraining order and demanding she leave their residence, was "an annoyance at best"); Lamanque, 3 F. Supp. 2d at 94 (Dismissing claim for intentional infliction of emotional distress, noting that even when read in conjunction with 111 paragraphs of the plaintiff's Complaint, plaintiff's allegations that defendants violated the ADA, First and Fourteenth Amendments, and participated in a *civil conspiracy* do not "directly or by inference describe conduct that exceeds all possible

bounds of decency such that it is atrocious and utterly intolerable in a civilized community"").

Therefore, this Court must dismiss Mr. Paquette's intentional infliction of emotional distress

claim against MHC, if, in fact, this cause of action was even asserted against MHC at all.

## CONCLUSION

For all the foregoing reasons, the plaintiff's deficient, conclusory, and unsupported

allegations against Melanson, Heath & Company, P.C. for defamation, civil conspiracy to

commit defamation and, to the extent alleged, intentional infliction of emotional distress

should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for

failure to state a claim upon which relief can be granted. Alternatively, the plaintiff should

be ordered to submit a more definite statement pursuant to Rule 12(e) that would enable

MHC to frame a responsive pleading.


August 2, 2005                                The Defendant,
                                              MELANSON, HEATH & COMPANY, P.C.
                                              By its attorneys,

                                              /s/ Edward D. Shoulkin
                                              Edward D. Shoulkin
                                              B.B.O. # 555483
                                              TAYLOR, DUANE, BARTON
                                                & GILMAN, LLP
                                              160 Federal Street, 5th Floor
                                              Boston, MA  02110
                                              (617) 654-8200

**CERTIFICATE OF SERVICE**

I, Edward D. Shoulkin, attorney for the defendant, Melanson, Heath & Company, P.C., hereby certify that on August 2, 2005, I mailed a copy of the foregoing document by first class mail, postage prepaid, to all counsel of record.

/s/ Edward D. Shoulkin
Edward D. Shoulkin