UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-40099FDS

| | |
|---|---|
| ANDREW PAQUETTE,<br>    Plaintiff | )<br>)<br>)<br>) |
| vs. | )<br>) |
| NASHOBA REGIONAL SCHOOL DISTRICT;<br>MELANSON, HEATH AND COMPANY;<br>JOHANNA VAN HOUTEN RILEY, in her<br>official capacity as the former Superintendent for<br>the Nashoba Regional School District and in her<br>individual capacity; and CARLOS LLANSO,<br>ANNE KINGAN, ALICE ROEMER, MARY<br>BETH YENTZ, LINDA WEATHERBEE,<br>ADAM TOCCI, JEANNE WYAND, NANCY<br>FLEMING, in their official capacities as former<br>members of the Nashoba Regional School<br>Committee and in their individual capacities,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS NASHOBA REGIONAL SCHOOL DISTRICT, JOHANNA VAN HOUTEN RILEY, CARLOS LLANSO, ANNE KINGAN, ALICE ROEMER, MARY BETH YENTZ, LINDA WETHERBEE, ADAM TOCCI, JEANNE WYAND AND NANCY FLEMING'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**I.   INTRODUCTION**

Defendants Nashoba Regional School District, Johanna Van Houten Riley, Carlos Llanso, Anne Kingan, Alice Roemer, Mary Beth Yentz, Linda Wetherbee, Adam Tocci, Jeanne Wyand and Nancy Fleming (collectively the "defendants") have moved the Court to dismiss Counts I, II, V (as to Nashoba Regional School District ("NRSD")), VII (as to NRSD), VIII, IX, X and XII of the First Amended Verified Complaint ("Complaint"). As grounds for this motion, the defendants state that none of these Counts states a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

The Court should dismiss Counts I and II against NRSD because neither Count states a claim under 42 U.S.C., § 1983 upon which relief can be granted. Neither Count I nor II alleges a governmental policy practice or custom of NRSD which was substantial motivating factor behind any alleged deprivation of the plaintiff's federal or state civil rights.

The Court should dismiss Counts V, VII, IX and XII against NRSD because NRSD cannot be held liable, and is immune to claims based on the alleged intentional torts of its agents and employees. See M.G.L. c. 258, § 10(c).

The Court should dismiss Counts VIII against NRSD because NRSD is not a "person" subject to potential liability under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I.

The Court should dismiss Counts X and XI because the plaintiff resigned from employment and was not terminated wrongfully. The Court should dismiss Counts X and XI as to defendants Llanso, Kingan, Roemer, Yentz, Wetherbee, Tocci, Wyand and Fleming because none of the school committee defendants can have terminated the plaintiff as a matter of Massachusetts law.

The Court should dismiss Count I as to all defendants because the plaintiff was not criminally prosecuted and cannot prove an actionable deprivation of his right against self incrimination.

The Court should dismiss Counts II and VIII as against all defendants because the plaintiff has not alleged a deprivation of due process which can support liability under 42 U.S.C., § 1983 or M.G.L. c. 12, § 11I. The allegations of the Complaint make clear that the plaintiff resigned from public employment, and his resignation does not implicate property interests protected by the Constitutional guaranty of due process of law. Further, the plaintiff has not alleged an interference with his civil rights by means of "threats, intimidation or coercion" on his state law civil rights claim.

The Court should dismiss Count IX because the information which the plaintiff alleges was

disseminated by the defendants was not private or intimate information concerning the plaintiff, but public information concerning a public figure and the fiscal condition of a public entity under the plaintiff's watch. The plaintiff's employment status with NRSD and NRSD's fiscal condition is not information as to which the plaintiff had any reasonable expectation of privacy, but public information to which the public was entitled.

The Court should dismiss Count X as against all defendants because the plaintiff was not terminated and has not alleged a violation of public policy which can support his cause of action.

The Court should dismiss Count XII as against all defendants because the plaintiff has not alleged extreme and outrageous conduct by any defendant which can support liability in tort under this common law cause of action.

## II. STATEMENT OF RELEVANT ALLEGATIONS AND FACTS

Accepting the allegations of the Complaint as true for the purpose of this Motion to Dismiss[1], the relevant facts as alleged by plaintiff are as follows. Plaintiff Andrew Paquette was hired by NRSD in 1996 to serve as its Director of Finance and Operations. In Autumn 2000, NRSD hired defendant Johanna Van Houten Riley ("Riley") as its Superintendent of Public Schools. Riley was the plaintiff's immediate supervisor.

The Complaint alleges, and the defendants deny, that in June 2002 the plaintiff disclosed a multi-million dollar deficit in NRSD's budget to Riley and to defendant Carlos Llanso ("Llanso"), Lllanso was Chair of the School Committee. On or about June 20, 2002, the plaintiff submitted his resignation to Riley. Riley accepted the plaintiff's resignation by letter dated June 26, 2002, but asked that he continue with NRSD for a transitional period to end September 13, 2002. The plaintiff

---

[1] The defendants deny most, if not all material, substantive allegations of the Complaint.

agreed to do so.

On August 16, 2002, Riley allegedly stated to the plaintiff that it would be best if his relationship with NRSD, ended with the plaintiff's resignation and extended for a limited time at the pleasure of the parties, end immediately and without further delay.

NRSD investigated the budget deficit and hired an independent auditing firm, Melanson, Heath and Company to audit its finances. NRSD asked the plaintiff to meet and cooperate with the auditor's investigation and to answer questions intended to straighten out the plaintiff's mismanagement of NRSD's finances. The plaintiff demanded that the questions be furnished in advance of, and as a precondition of the meeting with the auditors. The plaintiff ultimately failed and refused to cooperate fully with the auditors.

The plaintiff claims that he learned that the defendants had contacted the legal authorities (the Worcester County District Attorney) and caused an investigation of NRSD's finances to be made. On information and belief, the Worcester County District Attorney's investigation has not yet been closed. Also on information and belief, the plaintiff has not been charged criminally.

In order to obtain information concerning NRSD's finances under the plaintiff's control, to determine the plaintiff's basis for allegations of wrongdoing by NRSD, and to obtain information in aid of the audit, NRSD filed a Petition for Discovery in the Worcester Superior Court. The state court ordered the plaintiff to appear and provide an oral deposition in response to questioning by NRSD's attorney. At this deposition the plaintiff, speaking through his attorney asserted his right under the Fifth Amendment and declined to answer any of NRSD's attorney's questions.

**III.   ARGUMENT**

   A.   THE APPLICABLE LEGAL STANDARD FOR A MOTION TO DISMISS.

Rule 12 (b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of actions which "fail to state a claim upon which relief may be granted." See Fed.R.Civ.P. 12 (b)(6). A motion to dismiss under Rule 12 (b)(6) tests the sufficiency of the pleadings. "When confronted with a motion to dismiss the court accepts as true all well-pleaded factual averments and draws all reasonable inferences in the plaintiff's favor." Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir.1989). However, the court need not accept a complaint's "bald assertions or legal conclusions" when assessing a motion to dismiss. See Abbott III v. United States, 144 F.3d 1, 2 (1st Cir.1996). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 28, n. 2 (1st Cir.1996). Dismissal is appropriate under Rule 12 (b)(6) of the Federal Rules of Civil Procedure if the complaint presents no set of facts justifying discovery. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).

   B.   THE COURT SHOULD DISMISS COUNT I BECAUSE THE PLAINTIFF HAS NOT PLED AND CANNOT PROVE AN ACTIONABLE DEPRIVATION OF HIS FIFTH AMENDMENT RIGHT AGAINST SELF INCRIMINATION.

Count I purports to state a claim against the defendants under 42 U.S.C., § 1983 for deprivation of the plaintiff's Fifth Amendment right against self-incrimination. The plaintiff's Fifth Amendment right against self incrimination is not implicated because he was not criminally prosecuted. Further, the plaintiff has not alleged and cannot prove that the defendants forced him to make any statement which is incriminating.

It is well settled in law that § 1983 does not create any substantive rights, but rather provides

a vehicle for the protection and vindication of rights secured by the United States Constitution or by federal law. Baker v. McCollan, 443 U.S. 137, 146 n.3 (1979); Boveri v. Town of Saugus, 113 F.3d 4, 6 (1st Cir. 1997). The plaintiff in a civil rights action under §1983 must prove, by a preponderance of the evidence, that a person acting under color of state law deprived her of a constitutional or federally-protected right. 42 U.S.C. § 1983; Tatro v. Kervin, 41 F.3d 9, 14 (1st Cir. 1994). Count I purports to allege liability under § 1983 for the defendants' alleged deprivation of the plaintiff's Fifth Amendment right against self incrimination.

The Fifth Amendment is made applicable to the states by the Fourteenth Amendment. See Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489 (1964). The Fifth Amendment provides, in relevant part "[n]o person . . . shall be compelled in *any criminal case* to be a witness against himself." U.S. Const., Amdt. 5 (emphasis added). It is axiomatic that "[t]he privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental right of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial." U.S. v. Verdugo-Urguidez, 494 U.S. 259, 264, 110 S.Ct. 1056 (1990).

The Supreme Court's opinion in Chavez v. Martinez, 538 U.S. 760, 123 S.Ct. 994 (2003) is instructive. In Chavez, a plaintiff alleged that a police sergeant was liable under § 1983 for subjecting him to coercive questioning after the plaintiff had been shot by another officer, which questioning resulted in the plaintiff making inculpatory statements. 538 U.S. at 763-64. The plaintiff was not charged with a crime and his inculpatory statements were never used against him in any criminal prosecution. See 538 U.S. at 764. The Court rejected the plaintiff's argument that "criminal case" as used in the Fifth Amendment encompasses the entire police investigatory process, and held instead that a "'criminal case' requires at the very least initiation of legal proceedings."Id.

at 766. A suspect cannot prove a deprivation of the Fifth Amendment's Clause against Self-Incrimination where he is never prosecuted for a crime, much less compelled to be a witness against himself in a criminal case. See id. at 766-67.

The Complaint does not allege that the defendants made the plaintiff incriminate himself in a criminal proceeding. The plaintiff's allegation that the defendants asked him to participate in an audit without first giving him "immunity" from subsequent criminal prosecution suggests that the defendants were authorized or required to do so. The plaintiff is mistaken in this assertion. The Court should dismiss Count I because it does not state a viable claim.

    C.    THE COURT SHOULD DISMISS COUNT II BECAUSE THE PLAINTIFF HAS NOT PLED AND CANNOT PROVE AN ACTIONABLE DEPRIVATION OF HIS RIGHT TO DUE PROCESS.

In Count II the plaintiff purports to allege deprivation of due process under the Fourteenth Amendment as a result of the alleged "termination" of his employment by the defendants. This claim must fail because the plaintiff was not terminated, but resigned from his position and his resignation was accepted by NRSD on June 26, 2002. Complaint, ¶¶. 29, 30.

    1.    The Plaintiff Was Not Terminated, He Resigned.

Under the Fourteenth Amendment, a state actor cannot discharge a public employee who possesses a property interest in continued employment without due process of law. See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487 (1985). Protected property interests are not created by the Constitution but rather by independent sources, such as state law. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701 (1972); see also Ortiz-Pinero v. Rivera-Arroyo, 84 F.3d 7, 17 (1st Cir.1996). In order to establish a constitutionally protected property interest, a plaintiff must demonstrate that he has a legally recognizable

expectation that he will retain his position. See Santana v. Calderon, 342 F.3d 18, 24 (1st Cir.2003). "A legitimate expectation of continued employment may derive from a statute, a contract provision, or an officially sanctioned rule of the workplace." Id.; Perry v. Sinderman, 408 U.S. 593, 601-02, 92 S.Ct. 2694 (1972).

The plaintiff has not alleged, nor can he prove that he had a legitimate expectation of continued employment after his resignation was accepted on June 26, 2002. Voluntary resignation cannot provide the basis for establishing deprivation of due process because an employee who resigns has no property interest in his former employment. See Patterson v. Tortolano, 359 F.Supp.3d 13, 17 (D.Mass.2005) citing Walker v. Waltham Housing Authority, 44 F.2d 1042, 1047 (1st Cir.1995)). "When an employee voluntarily resigns, the public employer need not conduct a hearing or provide pre-termination notice and opportunity to be heard." Id. Since the plaintiff voluntarily resigned his position, he did not have a legitimate expectation of continued employment with the defendant.

In his Complaint, the plaintiff admits that he tendered his resignation on June 20, 2002 and that it was accepted by Riley on or about June 26, 2002. See Complaint, ¶ 29-30. Under Massachusetts law, only employees who can be terminated only for "just cause" have a constitutionally protected property interest in their employment. See Whalen v. Massachusetts Trial Court, 397 F.3d 19, 24 (1st Cir.2005). After the plaintiff's resignation he became, at most, an at-will employee and cannot reasonably have had any legitimate expectation of continued employment. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

    2.  Defendants Llanso, Kingan, Roemer, Yentz, Wetherbee, Tocci, Wyand and <u>Fleming Did Not Terminate The Plaintiff</u>.

The defendants deny that the plaintiff was terminated and reiterate that the plaintiff resigned from his government employment. However, even if the plaintiff could establish that Riley's alleged comment that "it would be in the best interest of the District if we ended our relationship immediately" terminated the plaintiff's employment, the school committee defendants did not terminate the plaintiff. Authority over hiring and discharge of a person in the plaintiff's position is vested only in the superintendent of schools under Massachusetts law.

Massachusetts General Laws provides, in relevant part:

> In the case of an employee whose duties require him to be assigned to more than one school, and in the case of teachers who teach in more than one school, those persons shall be considered to be under the supervision of the superintendent for all decisions relating to dismissal or demotion for cause.

M.G.L. c. 71, § 42. As Director of Finance and Operations, the plaintiff was assigned duties which required him to be responsible to NRSD and not to one school. The school committee members were unable to terminate the plaintiff's employment and cannot be liable to the plaintiff for allegedly doing so.

  D.  THE COURT SHOULD DISMISS COUNTS I AND II BECAUSE THE PLAINTIFF HAS NOT ALLEGED A PRIMA FACIE CASE OF GOVERNMENTAL <u>LIABILITY UNDER 42 U.S.C., § 1983.</u>

Subdivisions of state government are not liable under § 1983, either under ordinarily applicable principals of vicarious liability or *respondeat superior*, merely because they employ a tortfeasor. <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 691 (1978). "In enacting § 1983, Congress did not intend to impose liability unless deliberate action attributable to a (governmental defendant) itself is the 'moving force' behind the plaintiff's deprivation of federal rights." <u>Monell</u>,

9

436 U.S. at 694. In order to establish liability against a governmental defendant under § 1983, a plaintiff must identify a municipal policy or custom that caused the alleged constitutional violation. Monell, 436 U.S. at 694. Requiring proof of an official policy "ensures that a (governmental defendant) is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the (governmental defendant)." Id.

The plaintiff must also plead and prove a direct link between the policy statement or custom and the constitutional violation. Bowen v. City of Manchester, 966, F.2d 13, 18 (1st Cir. 1992). "[I]solated instances of unconstitutional activity [by subordinates] ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise show deliberate indifference." Maldanado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 582 (1st Cir. 1994).

The plaintiff in the present lawsuit has not alleged and cannot prove that a policy or custom of NRSD was a substantial motivating factor in causing the constitutional deprivations alleged in the Complaint. Because the plaintiff has not pled a deliberate governmental decision by NRSD which was a substantial motivating factor of any deprivation of the plaintiff's constitutional rights, the Court should dismiss Counts I and II as against NRSD.

  E. THE COURT SHOULD DISMISS COUNT IX BECAUSE IT DOES NOT ALLEGE A VIABLE CLAIM AGAINST ANY DEFENDANT.

    1. The Court Should Dismiss Count IX Against NRSD Because NRSD Is Not A Person Subject To Liability Under The Massachusetts Civil Rights Act.

Count IX of the Complaint purports to state a claim as against all defendants under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I. Since NRSD is not a "person" subject to liability under the Massachusetts Civil Rights Act, the Court should dismiss Count IX as against

NRSD.

The Massachusetts Civil Rights Act provides, in relevant part:

> "Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages."

(Emphasis added). M.G.L. c. 12, § 11I. It is settled in law that governmental employers are not "persons" subject to liability under the Massachusetts Civil Rights Act. Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 591-592, 747 N.E.2d 729, 744 (2001); See Allan v. Fire Chief of Sudbury, 63 Mass.App.Ct. 1108, 824 N.E.2d 487 (2005); Kelley v. Laforce, 288 F.3d 1, 11 n. 9 (1st Cir. 2002). Accordingly, the Court should dismiss Count XI against NRSD.

        2.    **The Court Should Dismiss Count IX Because It Does Not Allege An Interference With The Plaintiff's Civil Rights By Means Of Threats, Intimidation Or Coerceion.**

The Complaint does not allege an interference with the plaintiff's civil rights by means of threats, intimidation or coercion, which allegation is an essential element of liability under the Massachusetts Civil Rights Act. The Court should dismiss Count IX of the Complaint because it does not state a claim upon which relief can be granted.

In order to prove liability under the Massachusetts Civil Rights Act, a plaintiff must plead and prove that:

> (1) his exercise or enjoyment of right secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion.

Bally v. Northeastern University, 403 Mass. 713, 717 (1989) (*quoting* M.G.L. ch. 12, § 11I). As argued in the preceding sections of this memorandum, the plaintiff has not alleged a cognizable deprivation of any state or federal civil right. Even leaving aside the first two prongs of the test, the plaintiff has not satisfied the third prong because the Complaint does not adequately allege, nor can the Plaintiff prove, that the defendant interfered, or attempted to interfere, with his rights by means of threats, intimidation or coercion.

In the context of the Massachusetts Civil Rights Act, the Massachusetts Supreme Judicial Court has held that "threat" involves the intentional exertion of pressure to make another fearful or apprehensive of injury. See Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994). "Intimidation" involves putting one in fear for the purpose of compelling or deterring conduct. See id. "Coercion" involves the application of such force, either physical or moral, to constrain him to do against his will something he would not otherwise have done. See id. Proof of an actual or potential confrontation accompanied by a threat of harm is an essential element of a claim under the Act. See id. at 473, 631 N.E.2d at 989; see also Bennett, 230 F.Supp.2d at 228, citing Carvalho v. Town of Westport, 140 F.Supp.2d 95, 100-01 (D.Mass.2001).

Not every alleged violation of law is a violation of the MCRA. See Longval v. Commissioner of Correction, 404 Mass. 325, 332 (1989). The Complaint alleges that the defendants deprived him of his right against self incrimination and deprived him of due process. For all of the reasons argued in the preceding sections neither purported deprivation is sufficient under the facts and allegations of this case to support liability.

Even if a purported directive that the plaintiff answer questions that might have the effect of incriminating the plaintiff in subsequent proceedings (which were never initiated) or "termination"

of the plaintiff after his resignation could amount to interference with civil rights, which the defendants deny, these alleged interferences cannot support liability under the Civil Rights Act because neither is alleged to have interfered with the plaintiff's exercise of rights by means of threats, intimidation or coercion. There is no allegation that the plaintiff incriminated himself by his statements.

The plaintiff does not allege, nor can he prove, that the defendant used threats, intimidation or coercion to interfere with his protected rights. The Complaint contains no allegation of a confrontation accompanied by a threat of harm between the defendant and the plaintiff. In the absence of such a physical confrontation, the plaintiff's claim must fail.

    F.    THE COURT SHOULD DISMISS THE PLAINTIFF'S CLAIM FOR VIOLATION OF HIS RIGHT TO PRIVACY

The Court should dismiss Count IX because it does not allege, nor can the plaintiff prove that the defendants made statements regarding the plaintiff of a "highly personal nature." As the information allegedly disseminated by the defendants was public information concerning a public official and public finances for which the plaintiff was responsible, the plaintiff has not pled and cannot prove an actionable invasion of his personal privacy.

Massachusetts law provides that "a person shall have a right against unreasonable, substantial or serious interference with his privacy." M.G.L. c. 214, § 1B. In order to establish liability for an invasion of privacy, a plaintiff must allege and prove that the defendant unreasonably, substantially and seriously interfered with his privacy by disclosing facts of a highly personal or intimate nature and that the defendant had no legitimate reason for doing so. See Martinez v. New England Medical Center, 307 F.Supp.2d 257 (D.Mass. 2004).

The plaintiff alleges that the defendants disseminated information concerning his job performance, work evaluations, disciplinary documentation, and promotion, demotion and termination information which he states, in a conclusory fashion, was "private." The information allegedly disclosed related to the plaintiff's job performance as the Director of Finance and Operations for the NRSD. <u>See</u> <u>e.g.</u> <u>Martinez</u>, 307 F.Supp.2d at 267. Even if such information could be considered highly personal in the context of a private individual, the plaintiff was at all times relevant a public employee and public figure, as such, must reasonably have had a diminished expectation of privacy. <u>See</u> <u>Pottle v. School Committee of Braintree</u>, 395 Mass. 861, 866 (1985). Moreover, to the extent that information allegedly disclosed concerned the fiscal crisis at NRSD which had developed under the plaintiff's watch, the public had a right to know and the defendants an obligation to disclose the nature and extent of the fiscal crisis, the cause of the crisis to the extent that it was determinable, the employment status of the public official responsible for NRSD's finances and the nature and extent of measures taken to investigate and resolve the fiscal crisis.

Since the information which the plaintiff claims was disseminated by the defendants was not highly personal or intimate to the plaintiff, but rather related to the plaintiff's job performance as a public official, the Court should dismiss Count IX.

### G. THE COURT SHOULD DISMISS THE PLAINTIFF'S CLAIM FOR TERMINATION IN VIOLATION OF PUBLIC POLICY

The Court should dismiss Count X of the Complaint which purports to state a claim for wrongful termination in violation of public policy. The defendants did not dismiss the plaintiff, he resigned. The defendants did not terminate the plaintiff in violation of public policy.

14

1.     The Plaintiff Was Not Terminated, He Resigned.

The plaintiff admits, as he must, that after June 26, 2001, he was working without an express employment agreement. The plaintiff had no express employment agreement after June 26, 2001 because he had resigned and his resignation had been accepted. See Complaint, ¶ 27-30. Notwithstanding of the plaintiff's resignation, and notwithstanding of his alleged disclosure of a multimillion dollar deficit to the defendants in June 2002, NRSD allegedly asked that the plaintiff remain in his position through September 13, 2002. See Complaint, ¶ 26-27, 30-31. The plaintiff's allegations of service after June 26, 2002, if provable, disprove his contention in Count X that he was terminated in violation of public policy.

In recognition of various competing interests, including among others, the employer's interest is running its business as it sees fit, and the public's interest in discouraging frivolous lawsuits by dissatisfied employees, Massachusetts courts have permitted redress for at-will employees based on public policy only in limited circumstances. See Smith v. Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass. 145, 149-50 (1989). "Redress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury). See id. at 150. The plaintiff's claim must fail because he does not allege, nor can he prove, that he was terminated for providing information regarding the budget. By the plaintiff's admission, defendant Riley asked him to remain on the job for several months even after he claims to have disclosed the budget deficit to the defendants.

The plaintiff's evident contention that he was terminated because he "exercised his legal right by remaining silent when asked to participate in an internal fiscal audit," even if proved, would not

establish a violation of public policy. The right to remain silent is a not legally guaranteed right, but is rather a prophylactic rule designed to safeguard the core constitutional right protected by the Self-Incrimination Clause of the Fifth Amendment. See Chavez, 538 U.S. at 770-71. The existence of the right to remain silent does not expand the scope of the Fifth Amendment and violation of a judicially crafted prophylactic rule does not violate the constitutional rights of any person. Id. at 772. Whereas the plaintiff might raise a colorable claim to assert a right against self incrimination under circumstances not at issue in the present case, his purported right against self incrimination did not excuse his refusal to provide assistance to NRSD with its audit and investigation of financial irregularities in a budget prepared and administered by the plaintiff when the information sought was not of type or sort reasonably likely to incriminate the plaintiff. Moreover, the plaintiff's admission that NRSD attempted to interact with him to secure his assistance with the audit through and after the date through which he had agreed to remain and assist NRSD demonstrates that the plaintiff was not terminated on June 26, 2002. The plaintiff was not terminated by NRSD but resigned.

        2.        The School Committee Defendants Cannot Have Terminated The Plaintiff.

For all of the reasons stated in Section C (2) of this memorandum above, defendants Llanso, Kingan, Roemer, Yentz, Wetherbee, Tocci, Wyand and Fleming cannot have terminated the plaintiff and cannot be liable to him on this count. Each of these defendants is entitled to dismissal of this Count X as a matter of law.

    H.    NRSD CANNOT BE HELD LIABLE FOR THE INTENTIONAL TORTS OF ITS AGENTS ALLEGED IN COUNTS V, VII, IX AND XII.

The Court should dismiss Counts V, VII, IX and XII against NRSD because none states a claim against NRSD upon which relief can be granted. NRSD, as a political subdivision of the

Commonwealth of Massachusetts cannot be held liable for the alleged intentional torts of its agents and employees as a matter of law.

The Massachusetts Tort Claims Act, General Laws chapter 258, partially abrogated the doctrine of sovereign immunity by authorizing private claims against the sovereign under limited circumstances. Notwithstanding of its limited authorization of private causes of action against governmental defendants, the Massachusetts legislature reserved governmental immunity for the intentional torts of governmental employees and agents including:

> <u>Any claim arising out of an intentional tort</u>, including assault, battery, false imprisonment, false arrest, <u>intentional mental distress</u>, malicious prosecution, malicious abuse of process, <u>libel, slander</u>, misrepresentation, deceit, <u>invasion of privacy</u>, interference with advantageous relations or interference with contractual relations.

M.G. L. c. 10 (c) (emphasis added). Because NRSD is immune to claims for damages based on alleged intentional infliction of mental distress, the Court should dismiss Counts V, VII, IX and XII against NRSD.

    I.    THE COURT SHOULD DISMISS THE PLAINTIFF'S CLAIM ALLEGING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BECAUSE THE COMPLAINT DOES NOT ALLEGE CONDUCT WHICH CAN SUPPORT LIABILITY ON THIS THEORY OF LIABILITY.

The Court should dismiss the plaintiff's claim for intentional infliction of emotional distress against all defendants because the Complaint does not allege shocking and outrageous conduct of the type which can support liability for intentional infliction of emotional distress. In order for the plaintiff to succeed on this claim, he must plead and prove that the defendants (1) intended to inflict emotional distress, (2) in a manner amounting to extreme and outrageous conduct, beyond all possible bounds of decency and utterly intolerable in a civilized community (3) to cause him severe

emotional distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it. See Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997); Agis v. Howard Johnson Co., 371 Mass. 140, 144-145 (1976); Restatement (Second) of Torts, § 46. Conduct considered extreme and outrageous must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and intolerable in a civilized community." Mello v. Stop & Shop, 402 Mass. 555, 562-63 (1988); Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987). Liability cannot be predicated upon:

> "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," nor is it enough "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort"; rather, [l]iability has been found only where the conduct has been found so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

Foley, 400 Mass. at 99; Restatement (Second) of Torts, § 46.

In substance the Complaint alleges, and the defendants deny, that the defendants disregarded the plaintiff's alleged disclosure of financial irregularities in NRSD's budget and subsequently attempted to shift blame away from themselves and onto the plaintiff for a budget shortfall which the plaintiff claims to have revealed to them in June 2002. See Complaint. The Complaint further alleges in substance, and the defendants deny, that the defendants pressed him to provide information which he believed might incriminate him and then terminated his employment when he did not cooperate with the audit to their satisfaction. Even if the plaintiff's allegations with respect to the

defendants could be proved, the defendants' alleged actions cannot reasonably be considered "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and intolerable in a civilized community." Mello, 402 Mass. at 562-63.

There is no allegation of "profoundly shocking" conduct by the defendants. Accordingly, the Court should dismiss Count XII as against all the defendants.

IV. **CONCLUSION**

For the reasons stated above, the defendants respectfully moves the Court to dismiss all Counts of the Complaint as detailed above.

> The Defendants,
>
> NASHOBA REGIONAL SCHOOL DISTRICT, JOHANNA VAN HOUTEN RILEY, CARLOS LLANSO, ANNE KINGAN, ALICE ROEMER, MARY BETH YENTZ, LINDA WETHERBEE, ADAM TOCCI, JEANNE WYAND and NANCY FLEMING,
>
> By Their Attorneys,
>
> /s/ William P. Breen, Jr.
> William P. Breen, Jr., Esq., BBO #558768
> Rebecca L. Andrews Esq., BBO #644846
> MURPHY, HESSE, TOOMEY & LEHANE, LLP
> 300 Crown Colony Drive, Suite 410
> Quincy, MA 02110
> (617) 479-5000

Dated: August 26, 2005