## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

| | | |
|---|---|---|
| ANDREW PAQUETTE, | ) | CIVIL RIGHTS COMPLAINT |
| PLAINTIFF, | ) | 42 U.S.C. §1983 |
| | ) | |
| V. | ) | CIVIL NO. <u>05-40099FDS</u> |
| | ) | |
| NASHOBA REGIONAL SCHOOL | ) | |
| DISTRICT; | ) | |
| MELANSON, HEATH AND COMPANY; | ) | **MEMORANDUM OF LAW IN** |
| JOHANNA VAN HOUTEN RILEY, in her | ) | **OPPOSITION TO THE MOTION OF** |
| official capacity as the former | ) | **THE DEFENDANT, MELANSON,** |
| Superintendent for the Nashoba Regional | ) | **HEATH, COMPANY, P.C., TO** |
| School District and in her individual | ) | **DISMISS COUNTS VI, VII, AND XII** |
| capacity; and | ) | **OF THE PLAINTIFF'S FIRST** |
| CARLOS LLANSO, ANNE KINGAN, | ) | **AMENDED VERIFIED COMPLAINT** |
| ALICE ROEMER, MARY BETH YENTZ, | ) | **OR, IN THE ALTERNATIVE FOR A** |
| LINDA WEATHERBEE, ADAM TOCCI, | ) | **MORE DEFINITE STATEMENT** |
| JEANNE WYAND, NANCY FLEMING, | ) | |
| in their official capacities as former members | ) | |
| of the Nashoba Regional School Committee | ) | |
| and in their individual capacities, | ) | |
| DEFENDANTS. | ) | |

NOW COMES Plaintiff Andrew Paquette and, by and through his attorneys, opposes the motion by Defendant Melanson, Heath & Company, P.C., to dismiss Counts VI, VII and XII, or, in the alternative, to provide a more definite statement of the First Amended Verified Complaint with respect to Defendant Melanson, Heath & Company, P.C.

## <u>INTRODUCTION</u>

This is a case that involves a multiple number of injustices committed by multiple Defendants in the late spring through early fall of 2002 against Plaintiff, Andrew Paquette ("Plaintiff" or "Mr. Paquette"). Although the conduct alleged to have been committed by Melanson, Heath & Company, P.C. ("Defendant" or "MHC"), does not involve the entire scope of time framed in the Complaint nor does it encompass all the Counts alleged in the Complaint,

in order to understand the role that MHC is alleged to have played in committing these injustices, it is essential that the Court have a broad understanding of all the facts in this case.

The Nashoba Regional School District ("District") hired Mr. Paquette as the Director of Finance and Operations in August of 1999.  (Compl. ¶ 15.)  One year later, the District hired Johanna Van Houten Riley ("Ms. Van Houten") as the Superintendent of Schools for the District. Id. at ¶ 16.  She was Mr. Paquette's direct supervisor.  Id. at ¶ 17.  Upon her hire, she requested that Mr. Paquette generate financial reports for the Nashoba Regional School Committee ("Committee") that were not as detailed as those he provided the Committee during his first year of employment.   Id. at ¶¶ 18-19.   In fact, on several occasions during her tenure as Superintendent, Ms. Van Houten personally instructed Mr. Paquette on the manner in which he should present the District's financial reports.  Id. at ¶ 22.

Throughout his tenure, Mr. Paquette alerted Ms. Van Houten to the District's financial problems and would periodically request that the District place a freeze on the budget.  Id. at ¶ 23.  In the spring of 2002, Mr. Paquette informed Ms. Van Houten that the District was facing a deficit of approximately one million dollar and requested that she order a spending freeze for the rest of the school year.  Id. at ¶¶ 23-24.  Despite issuing the requested spending freeze, Ms. Van Houten ultimately authorized another one million dollars in expenditures for that fiscal year, and as his Supervisor often forced the Plaintiff to sign off on them.  Id. at ¶ 24.  The School Committee also authorized spending after the issued freeze.  Id. at ¶ 25.  Eventually, because of the fiscal crisis, Mr. Paquette attempted to refuse altogether to authorize any further expenditures.  Id.  Altogether, there were approximately 150 purchase orders that Mr. Paquette did not sign or process after the District issued the requested spending freeze.  Id.

In light of the impending crisis, Mr. Paquette detailed the growing, multi-million dollar deficit to Ms. Van Houten and the School Committee Chair, Carlos Llanso, at the end of the fiscal year in June 2002. Id. at ¶ 26. That same day, he also detailed the growing financial crisis the full budget subcommittee. Id. at ¶ 27. At the meeting, the School Committee members accused Mr. Paquette of criminal activity. Id.

In reaction to the allegations by the School Committee, Mr. Paquette submitted his resignation on June 20, 2002. Id. at ¶ 29. However, he later emailed Ms. Van Houten, stating that he would be willing to rescind his resignation if Ms. Van Houten wanted to discuss the issues in detail. Id. In a June 26, 2002 letter to Mr. Paquette, Ms. Van Houten thanked Mr. Paquette for his "loyalty and service" and requested that he continue working until September 13, 2002. Id. at ¶30. Pursuant to her request, Mr. Paquette agreed. Id.

Despite their knowledge to the contrary, in August of 2002, Ms. Van Houten and Alice Roemer, the District Treasurer ("Ms. Roemer"), publicly claimed that *they* had *discovered* an extensive budget deficit and placed the blame solely on Mr. Paquette. Id. at ¶ 33. They first made these public statements at a time when Mr. Paquette was out of the country on vacation. Id. Ms. Van Houten suggested she had no previous knowledge of the District's true financial picture and placed the blame for the deficit solely on Mr. Paquette. Id. At no time did any of the School Committee members, who for a period of months had actual knowledge of the financial crisis and the reasons for it, ever request that Ms. Van Houten refrain from making her false and misleading statements to the public. Id. at ¶ 34.

At around the same time Ms. Van Houten and Ms. Roemer declared they had discovered the financial crisis, the District contacted Defendant MHC, an independent accounting firm, to perform an audit of the School District's finances. Id. at ¶ 33. Although Mr. Paquette originally

participated in this investigation as requested by the District, he stopped cooperating once he learned, via newspaper articles rather than the District, that Ms. Van Houten had also requested a criminal investigation into the matter.  <u>Id.</u> at ¶¶ 38-46.  At no time did the District offer Mr. Paquette immunity for any statements he might make in the internal investigation that might be later used to pursue a criminal matter.  <u>Id.</u> at ¶¶ 41, 44.  In addition, as alleged in Counts I through V and Counts VII through XII of the Complaint, the District, Ms. Van Houten, and the individual School Committee members ("MHC's Co-Defendants") intentionally engaged in a series of activities that deprived the Plaintiff of his Federal and State constitutional rights and his wages under Federal and State law; committed multiple defamations against Mr. Paquette; and committed various and common law violations against Mr. Paquette.  <u>Id.</u> at Counts I-V; Counts VII-XII.  One of the District's primary purposes for engaging MHC to conduct an audit was to use the independent accounting firm to point the finger for the District's financial crisis at Mr. Paquette and away from MHC's Co-Defendants.  <u>Id.</u> at ¶¶ 101.

During the period of time in which MHC was investigating the District's financials, the criminal investigation into the District's financial crisis remained open and on-going while Mr. John Sullivan of MHC made various statements at public meetings he attended and to the press regarding Mr. Paquette.  <u>Id.</u> at ¶ 90.  Specifically, he made false statements concerning Mr. Paquette's job performance and made false statements that Mr. Paquette was to blame for the District's financial crisis, statements that the Plaintiff engaged in unethical accounting practices, statements implicating that the Plaintiff had engaged in criminal activity, and statements implying that the Plaintiff was solely responsible for the financial crisis at the District.  <u>Id.</u> at ¶¶ 91-92.  Moreover, Mr. Sullivan knew that these statements were false because the accounting practices that he alleged Mr. Paquette engaged in unethically were accounting practices that

MHC has, in fact, utilized and recommended to other Massachusetts School Districts and Municipalities. Id. at ¶ 93. Even more outrageous, Mr. Sullivan did not simply make these false statements against Mr. Paquette on his own, but he made them as part of his agreement with the Co-Defendants to defame Mr. Paquette to accomplish the purpose of publicly pointing the finger at Mr. Paquette for the District's financial crisis. Id. at ¶ 101. Many of the statements made by Mr. Sullivan were statements made as part of a united front with the District. Id. at ¶ 102. At no time did MHC's representatives or MHC's Co-Defendants make any representations that the disseminated information about Mr. Paquette was false, despite their knowledge to the contrary. Id. at ¶¶ 81, 94, 104. It is these facts that form the basis of Mr. Paquette's complaint against MHC.

## ARGUMENT

### I.    A RULE 12(B)(6) MOTION TO DISMISS IS ONLY GRANTED IN THE RAREST OF OCCASIONS, NOT PRESENT HERE

The Defendant has moved to dismiss counts VI, VII and XII of the First Amended Verified Complaint for failure to state a claim upon which relief may be granted. In so moving, the Defendant MHC faces a particularly heavy burden: A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Canney v. City of Chelsea, 925 F. Supp. 58, 63 (D. Mass. 1996), quoting, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In assessing a motion to dismiss, the Court must take all allegations contained in the complaint as true and must draw all reasonable inferences in favor of the non-moving party. Lecrenski Bros. v. Johnson, 312 F. Supp. 2d 117 (D. Mass. 2004), quoting, Albright v. Oliver, 510 U.S. 266, 268 (1994). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." <u>Canney</u>, 925 F. Supp. at 63, quoting, <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) (citations omitted).

The crucial inquiry on a motion to dismiss is whether, based on the allegations of the complaint at issue, the plaintiff is entitled to offer evidence in support of his claims. <u>Siniscalchi v. Shop-Rite Supermarkets, Inc.</u>, 903 F. Supp. 182, 186 (D. Mass. 1995) (citing <u>Scheuer</u>, 416 U.S. at 236). If the complaint is sufficient to state a cause of action in accordance with the law under any theory, the court must deny a motion to dismiss. <u>Wehringer v. Powers & Hall, P.C.</u>, 874 F. Supp. 425, 427 (D. Mass. 1995) (quoting <u>Knight v. Mills</u>, 836 F.2d 659, 665 [1st Cir. 1987]). Thus, courts grant motions to dismiss in only the rarest of occasions and none of the reasons for granting such a motion is present here.

A.    **THE PLAINTIFF, ANDREW PAQUETTE, HAS PROPERLY PLEAD A CLAIM FOR DEFAMATION UNDER THE LIBERAL PLEADING REQUIREMENTS OF THE FEDERAL DISTRICT COURT**

1.    **Requirements for Pleading Defamation**

In its Memorandum in support of its 12(b)(6) motion, the Defendant acknowledges that the Massachusetts Rules of Civil Procedure do not control actions brought in Federal Court. (Def.'s Mem. of Law at p. 7). Nevertheless, the Defendant contends that the prevailing view of the federal pleading requirement for defamation is that the standards for pleading defamation are more stringent than that required of other claims, relying on 5 Wright & Miller, Federal Practice & Procedure §1245. <u>Id.</u> However, the Defendant's assertion ends where Wright & Miller's analysis begins. The quotation from Wright & Miller is but an introduction to a lengthier explanation of the current legal landscape for pleading a defamation claim in Federal Court. Specifically, the explanation offered by Wright & Miller states that under the current legal framework "all the Plaintiff is technically required to do is state a claim for which relief may be

granted [pursuant to Fed.R.Civ.P. 8]" and that, generally, an allegation of publication and the place where the defendant circulated the defamatory matter will suffice.  See 5 Wright & Miller, Federal Practice & Procedure §1245.  Contrary to the assertions of the Defendant, the First Circuit and this District have made clear that, despite whatever historic tendency to treat defamation claims with disfavor may persist, that the correct pleading standard is the standard required by Rule 8.   Andresen v. Diorio, 349 F.3d 8, 18-19 (2003) (despite the fact that defamation is a disfavored claim under Massachusetts law, the Federal pleading requirements apply in Federal court);  see also Bleau v. Greater Lynn Mental Health & Retardation Ass'n, 371 F. Supp 2d 1, 2005 U.S. Dist. LEXIS 10765 (D. Mass. 2005) (stating that the holding in Andresen references the primacy of Rules 8 and 9, implying that no heightened pleading requirement for defamation claims brought in federal court exists); Lecrenski Bros. v. Johnson, 312 F. Supp. 2d at 122, n. 4 (acknowledging that in post-Andresen hindsight, heightened pleading standard does not apply); Davidson v. Yihai Cao, 211 F. Supp. 2d 264, 276  (D. Mass. 2002) (Rule 8 applies when pleading defamation).

Contrary to Defendant's assertions, stating a defamation claim also does not require that each and every element of the claim be specifically pleaded, nor does it require a plaintiff to assert with specificity the time, place, and substance of the alleged defamation or to whom the defamatory remarks were made.  See Davidson v. Yihai Cao, 211 F. Supp. 2d at 276 (a complaint is not required to contain the defamatory statements in "haec verba" [citations omitted]); DeSalle v. Key Bank of Southern Maine, 685 F. Supp. 282 (D. Me. 1988) (holding that federal standards apply to defamation claims and that, as such, the plaintiff need not assert the specific time, place, substance of the defamation, nor assert to whom the defamatory remarks were made).   In fact, contrary to the Defendant's assertion that recent case law has

acknowledged <u>Phantom Touring, Inc. v. Affiliated Publications</u>, 953 F.2d 724, 728, n. 8 (1st Cir. 1992) as imposing a heightened pleading standard in defamation cases, current case law does the exact opposite.  Relying on the holdings of <u>Educadores Puertoriquenos en Accion v. Hernandez</u>, 367 F.3d 61, 66 (1st Cir. 2004) and <u>Anderson v. Diorio</u>, 394 F.3d 8, 17 (1st Cir. 2003), the District Court recently held that to be consistent with those cases "at most, <u>Phantom Touring</u> stands for the proposition that, under the notice pleading requirements, if a complaint specifically identifies the scope of the comments at issue in a case involving defamation claims, the proper route for adding additional comments is a motion to amend."  <u>Bleau</u>, 371 F. Supp 2d at 4.  In other words, if the issue is whether the Plaintiff can enlarge the scope of the defamation beyond that which he/she has actually alleged then <u>Phantom Touring</u> holds that the proper avenue is through a motion to amend.  <u>Phantom Touring</u>, then, is a precautionary note for plaintiffs to frame their defamation claims in the broadest terms possible because if they plead with too much specificity[1], they run the danger of having their legitimate claims foreclosed.

The irony in Defendant's analysis is that at the same time MHC concedes that the Massachusetts standard does not apply, it essentially asks this Court to impose the Massachusetts pleading standards for defamation.  The Defendant does this by contending that Count VI of Mr. Paquette's Complaint is insufficient because it does not provide more specificity about *what* John Sullivan said, *when* John Sullivan made the statements, and *where* MHC may locate a copy of the statements made by John Sullivan.  (Def.'s Mem. of Law at pp. 5, 9).  However, the information the Defendant claims is required under the Federal standards, such as the name of the exact publications and the specific wording, is exactly the type of information that Massachusetts law requires but that the Federal Court does not require.  <u>See</u>, <u>e.g.</u>, <u>Bleau</u>, 371 F.

---

[1] In <u>Phantom Touring</u>, the plaintiff's Complaint specifically stated that only five publications constituted the defamation and, as such, the Court refused to allow it to bring in a sixth article that it cited in its Motion for Reconsideration.  <u>Phantom Touring, Inc.</u>, 953 F.2d 724, 728 (1st Cir. 1992).

Supp 2d 1, 2005 U.S. Dist. LEXIS 10765 (D. Mass. 2005) (holding that the <u>Andresen</u> decision overruled <u>Dorn v. Astra USA</u>, 975 F. Supp. 388, 395-96 (D.Mass. 1997), the Federal case that mistakenly required a plaintiff to allege the "tenor" of the defamation, along with the precise wording of at least one sentence of the alleged defamatory statement(s); the means and approximate dates of publication; and (3) the falsity of those statements."); <u>see</u> <u>also</u>, <u>Eyal v. Helen Broad. Corp.</u>, 411 Mass. 426, 583 N.E.2d 228, 231 n.7 (1991) (stating Massachusetts pleading standard); <u>White v. Spence</u>, 5 Mass. App. Ct. 679, 685-86, 369 N.E.2d 731, 735 (1977) (stating Massachusetts standard).

When applying the appropriate pleading standard for defamation cases in Federal Court it is clear that Mr. Paquette has, as discussed below, asserted the time, place and substance of the allegations, as well as, asserted to whom Mr. Sullivan made the defamatory remarks and, as such, Mr. Paquette's pleading falls comfortably within the liberal standards required by Fed.R.Civ.P. 8. Quite simply, the Defendant's characterization of the pleading requirements for defamation is incorrect and Plaintiff Paquette's defamation claim against MHC should survive the Motion to Dismiss.

2.    <u>**The Plaintiff's Claim Clearly falls within the Federal Pleading Requirements for Defamation**</u>

In the Defendant's Memorandum of Law, which inappropriately relies on <u>Phantom Touring</u> as the source for the defamation pleading standards in Federal court, the Defendant asserts that Mr. Paquette's defamation claim has offered no information about the "precise language challenged as defamatory". (Def.'s Mem. of Law at p. 8, quoting <u>Phantom Touring</u>). De-contextualizing a list of phrases in the Complaint, the Defendant attempts to argue that the Complaint only alleges "vague accusations about a wide range of non-descript statements" and that the Court should not "rely [on these accusations] when considering this motion." <u>Id.</u> Not

only is Defendant's argument an attempt to have this honorable Court ignore the well established standards for a 12(b)(6) motion that are discussed, supra, on pp. 5-6, but the Defendant also fails to attack or cite the substance of the factual averments that are actually found in the text of Count VI of the Complaint, which alleges defamation against MHC. As discussed in further detail in the paragraph below, the language in Count VI is quite clear and Mr. Paquette adequately states a claim for relief under the liberal pleading requirements of Fed.R.Civ.P. 8 against MHC. Moreover, the allegations of this Complaint are factual allegations and not bald assertions, unsupportable conclusions, or opprobrious epithets that the Court can ignore, as the Defendants attempts to categorize them. See, e.g., Snowden v. Hughes, 321 U.S. 1, 10 (mere "opprobrious epithets such as 'willful' and 'malicious' cannot be basis for well-pleaded facts).

Specifically, Mr. Paquette alleges that at the time the District disclosed the financial crisis to the public, it hired MHC to perform a forensic audit into the School District's financials and prepare a report for the sum of sixty thousand dollars. (Compl. at ¶89.) Furthermore, it alleges *who* made the statements and *when* these statements were made in alleging that Mr. John Sullivan of MHC made the defamatory comments at public meetings and to the press during the period he was conducting the audit for the District. Id. at ¶90. Furthermore, Paragraphs 90 through 93 of the Complaint explain *what* statements constitute defamatory remarks by Mr. Sullivan when it states Mr. Sullivan made false statements concerning Mr. Paquette's job performance and made false statements that Mr. Paquette was to blame for the District's financial crisis; statements that Mr. Paquette engaged in unethical accounting practices; statements implying Mr. Paquette had engaged in criminal activity; and, statements implying that the Plaintiff was solely responsible for the financial crisis at the District. Id. at ¶¶ 91-92. In sum, there is no doubt that this pleading falls squarely within the confines of the pleading

requirements of this Court, which recent case law makes clear does not require in haec verba pleading, specificity or particularity.  See Bleau, 371 F. Supp 2d at 1; Lecrenski Bros. v. Johnson, 312 F. Supp. 2d at 122, n. 4; Davidson, 211 F. Supp. at 276.  Accordingly, Count VI of the Complaint, which states a claim of defamation against MHC, should survive.

> **3.** **The Law of The District, As Well As, The Law of Other Jurisdictions Supports Upholding the Plaintiff's Defamation Pleading**

In its brief, Defendant cites a series of cases from other jurisdictions in an attempt to support its argument that Mr. Paquette has not adequately made out a claim for defamation. However, as explained in detail earlier in this Memorandum, the case law of this Judicial District is clear that the Federal pleading requirements for defamation have been met in this instance and that Phantom Touring, which the Defendant clings to for support, is questionable. Id. Moreover, despite the laundry list of extra-jurisdictional cases Defendant cites, there are an equally large number of cases from other courts, including other District Courts in the First Circuit, which support the Plaintiff's view.[2]

**B.** **THE PLAINTIFF'S CLAIM FOR CIVIL CONSPIRACY TO COMMIT DEFAMATION SHOULD NOT BE DISMISSED BECAUSE THE PLAINTIFF HAS AVERRED FACTS SUFFICIENT TO SURVIVE A MOTION TO DISMISS**

> **1.** **Requirements for Pleading Civil Conspiracy**

---

[2] See generally DeSalle v. Key Bank of Southern Maine, D.C. Me. 1988, 685 F. Supp. 282 (D. Me. 2003) (the plaintiff need not assert the specific time, place, substance of the defamation or assert to whom the defamatory remarks were made); O'Neill v. Valley Reg'l Health Care, Inc., 2001 U.S. Dist LEXIS 8992 (D.N.H. 2001) (defamation survived under Federal rules where plaintiff simply alleged "that [the defendant] made false statements about her job performance to her subordinates at work"); Odom v. Columbia Univ., 906 F. Supp. 188 (S.D.N.Y. 1995) (a complaint is not required to plead defamation in haec verba if the notice enables the plaintiff to defend himself); FDIC v. S. Prawer & Co., 829 F. Supp. 439, 1993 U.S. Dist. LEXIS 11054 (D. Me. 1993) (specificity is not required for pleading defamation in the federal courts); Stabler v. New York Times Co., 569 F. Supp. 1131 (S.D. Tex. 1983) (allegation that a newspaper article was defamatory in its entirety was sufficient notice); Beascoechea v. Sverdrup & Parcel & Assoc., Inc., 486 F. Supp. 169 (E.D.P.A. 1980) (pleading sufficient where plaintiff did not specify the defamatory communications in haec verba, set out the circumstances of publication, or set out the facts relied on to establish publication).

In its brief, the Defendant incorrectly states the standard for civil conspiracy by conflating the two separate theories of civil conspiracy available under Massachusetts law into one standard.  See Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1563-1564 (1st Cir. 1994) (two kinds of civil conspiracy have been delineated in Massachusetts decisions). Specifically, the Defendant claims that to state a viable claim for civil conspiracy, Mr. Paquette must allege that MHC, along with MHC's Co-Defendants, "acting in unison, had some peculiar power of coercion over him that they would not have had if acting independently." Carroll v. Xerox Corp., 294 F.3d 231, 243 (1st Cir. 2002); Kibbe v. Potter, 196 F.Supp. 2d 48, 76 (D. Mass. 2002).   Moreover, Defendant alleges that Mr. Paquette must prove that there was a "common design or agreement…between two or more persons to do a wrongful act" or to "accomplish a lawful purpose by unlawful means." Carroll, 294 F.3d at 243 (internal citations omitted). Finally, MHC asserts that the plaintiff must then prove that an unlawful or tortious act occurred. Kibbe, 196 F.Supp. 2d at 76.

To be sure, under Massachusetts law, there is a form of civil conspiracy that requires an element of coercion. However, under Massachusetts law, the element of coercion is required *only* when the claim of civil conspiracy is being alleged as an independent tort itself; that is, coercion is only required if there was no independent basis for imposing tort liability -- where the wrong was in the particular combination of the defendants rather than in the tortious nature of the underlying conduct. See Aetna Cas. Sur. Co. 43 F.3d at 1563-1564 (1st Cir. 1994), citing, Neustadt v. Employers Liab. Assur. Corp., 303 Mass. 321, 325, 21 N.E.2d 538 (1939) (stating the standard for *the independent tort* of civil conspiracy). In Count VII of his Complaint, however, Mr. Paquette has alleged and averred facts to prove a different type of civil conspiracy available under Massachusetts law, which imposes liability on the Defendant for the torts the

12

Plaintiff has suffered through the concerted action of multiple Defendants to commit a wrongful act.  See Aetna Cas. Sur. Co., 43 F.3d at 1563-1564.  This form of civil conspiracy, reflected in the Restatement (Second) of Torts § 876 (1979), derives from "concerted action," whereby liability is imposed on one individual for the tort of another.  See Aetna Cas. Sur. Co., 43 F.3d at 1564 (citing Gurney v. Tenney, 197 Mass. 457, 466 (1908)).   To prove this type of civil conspiracy, the Defendant need not be the actual party that committed the tort, nor must there be any allegation of coercion on the part of the Defendants.  Id.  Rather, all that is required for liability to attach on this basis is, "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." Id.  Cases hold that a viable defamation claim is a sufficient allegation of the tort element of this second type of civil conspiracy claim. See, e.g., Tech Plus, Inc. v. Ansel, 59 Mass. App. Ct. 12, 26 793 N.E.2d 1256, 1268 (where defamation claims were improperly dismissed, the plaintiffs were allowed a new trial of their claim of civil conspiracy).

### 2.        The Plaintiff's Civil Conspiracy claim is sufficient

Utilizing the correct standards cited above, there is no question that Mr. Paquette has alleged a civil conspiracy sufficient to survive a Motion to Dismiss.  First, Mr. Paquette alleges in Paragraph 100 of his Complaint "on information and belief, Melanson, Heath and Company entered into a written contract for sixty thousand dollars ($60,000) to perform a fiscal audit of the School District's finances and produce a written report regarding the same."  (Compl. at ¶ 100).  In addition, on information and belief, Mr. Paquette alleges, "the District hired MHC to conduct the audit, make public statements and produce a report with the purpose of pointing the finger at Plaintiff."  Id. at ¶101.  Furthermore, Plaintiff alleges that during the course of the

13

investigation the Parties, including MHC, purposefully engaged in defamation against the Plaintiff in order to affect their wrongful purpose of pointing the finger at the Defendant.   Id. at ¶¶101-107.  Not only did MHC and the Co-Defendants make these statements separately, but they also presented them to the public as a united front during the time of the audit.  Id. at ¶102. As this complaint not only alleges that MHC and its Co-Defendants agreed to commit a wrongful act against Mr. Paquette (i.e. engage in defamatory activity with the purpose of pointing the finger at Mr. Paquette) and to commit this defamation in furtherance of that wrongful goal, but also adduces facts, which taken in the light most favorable to Mr. Paquette, support his allegation that MHC and the Co-Defendants acted together under an agreement to commit these wrongful acts, a sufficient complaint of civil conspiracy has been alleged and the Defendant's Motion to Dismiss should be denied.

**C.    THE PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS SUFFICIENT TO SURVIVE A MOTION TO DISMISS**

**1.    Requirements for Intentional infliction of Emotional Distress**

There is no doubt that proving a claim of intentional infliction of emotional distress under Massachusetts law is difficult, requiring:

> 1) That the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of [the] conduct; 2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; 3) that the actions of the defendant were the cause of the plaintiff's distress; and 4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable [person] could be expected to endure it.

Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (quoting Agis v. Howard Johnson Co., 371 Mass. 140 (1976)).  Despite the fact that a litigant faces a high burden in ***ultimately*** proving an intentional infliction of emotional distress claim, the law does not require a plaintiff to

actually prove all the facts when setting out a claim of intentional infliction of emotional distress. Moreover, according to the seminal case involving this tort, <u>Agis v Howard Johnson Co.</u>, 371 Mass. 140 (1976)[3], if "reasonable men could differ on [the] issues" and a plaintiff has alleged facts and circumstances which "reasonably could lead the trier of fact to conclude that defendant's conduct was extreme and outrageous," "it is for the jury, subject to the control of the court," to determine whether there should be liability. <u>Id.</u> (citations omitted).

To be sure, the standard for extreme and outrageous conduct is a high one that does not encompass simply "workaday insults, annoyances, or even threats and petty oppressions." <u>Conway v. Smerling</u>, 37 Mass. App. Ct. 1, 14 635 N.E.2d 268, 273 (1993). However, it is also not an impossible standard to meet. According to Massachusetts law, extreme and outrageous involves "a high order of reckless ruthlessness or deliberate malevolence." <u>Foley v. Polaroid Corp.</u>, 400 Mass. 82 (1987). Although such extreme and reckless conduct can include many things, several cases have held that certain conduct, which when viewed alone may not constitute outrageous conduct, may do so when viewed in its entirety. <u>See</u>, <u>e.g.</u>, <u>Carvalho v. Town of Westport</u>, 140 F. Supp. 2d 95, 102 (2001) (a series of "affirmative steps to unduly pressure, interrogate, intimidate, and coerce [individuals] into bearing witness against plaintiff in a disciplinary hearing designed to embarrass and harass" is sufficiently outrageous to justify denial of the motion to dismiss); <u>Johnson v. Teamsters Local 559</u>, 102 F.3d 21, 25 (1st Cir. 1996); <u>Boyle v. Wenk</u>, 378 Mass. 592, 595 (1979) (repeated harassment may compound the

---

[3] In <u>Agis</u>, the conduct alleged by the plaintiff was much less severe then the conduct Mr. Paquette alleges in his Complaint. There, the plaintiff's complaint survived a motion to dismiss where she alleged that her supervisor notified all waitresses, including the plaintiff, that there was theft occurring at the restaurant by unknown person(s) and that, until the responsible person(s) were discovered, he would fire all the present waitresses in alphabetical order. <u>Id.</u> After he fired the plaintiff, whose name began with the letter "A", the Plaintiff alleged that she became greatly upset, began to cry, and that she sustained emotional distress, metal anguish, and loss of wages and earnings. <u>Id.</u> Moreover, she alleged that the defendants knew or should have known that their actions would cause such distress and that the defendants' actions were reckless, extreme, outrageous and intended to cause emotional distress and anguish. <u>Id.</u>

outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability for infliction of emotional distress). In conformity with such case law, the circumstances alleged by Mr. Paquette, detailed below, are sufficient to form the basis of a intentional infliction of emotional distress claim.

      2.    **An application of the standards, compels the conclusion that the intentional infliction of emotional distress claim should survive this Motion**

In his complaint, Andrew Paquette does not simply "parrot" the elements of an intentional infliction of emotional distress claim as the Defendant contends. Re-alleging and incorporating the substance of the allegations found in the previous 143 paragraphs of his Complaint, rather than regurgitating them verbatim in Count XII, Mr. Paquette alleges that after securing a contract to perform a financial audit of the District's finances, Mr. John Sullivan of MHC knowingly made a series of false statements at public meetings and to the press regarding Mr. Paquette. (Compl. at ¶ 90). These false statements and comments expressly and impliedly included false statements concerning Mr. Paquette's job performance, false statements that Mr. Paquette was to blame for the District's financial crisis, false statements that the Plaintiff engaged in unethical accounting practices, false statements implying that the Plaintiff had engaged in criminal activity, and false statements implying that the Plaintiff was solely responsible for the financial crisis at the District. Id. at ¶¶ 91-92. Moreover, Plaintiff alleges that not only did Mr. Sullivan engage in this defamation, but that this defamation was part of a concerted effort by Mr. Sullivan and the Co-Defendants to point the finger for the District's financial problems solely at Mr. Paquette. Id. at ¶¶ 101. Furthermore, Mr. Paquette does not allege that he was merely "insulted, suffered indignity, threats, annoyances, petty oppressions or other trivializes" or that MHC's defamation or participation in a civil conspiracy, alone, constituted extreme and outrageous conduct. See, e.g., Doyle, 103 F.3d at 195; Foley, 400 Mass.

at 99; Restatement (2d) of Torts §46, Commend d; see also, Lamanque v. Mass Dept. of Employ't & Training, 3 F.Supp. 2d 83, 94 (D. Mass. 1998).  Nor as Defendant has cited in its Memorandum is this a case where the facts alleged involved merely bad manners and mere hurt feelings.  (Def.'s Mem. of Law, p. 15, citing Doyle v. Hasbro, Inc., 103 F.3d at 195).  Rather, he has alleged that when viewed together, the severity of MHC's defamation against him, which occurred throughout the period of time that the fiscal audit was being conducted; its occurrence in the context of a civil conspiracy against Mr. Paquette, which included not only the defamation by MHC against the defendant but also multiple defamations by MHC's Co-Defendants; and the multiple acts that also form the basis of various constitutional, statutory, and common law violations by the Co-Defendants against Mr. Paquette, all constitutes extreme and outrageous conduct that caused Mr. Paquette to suffer severe emotional distress.  (See Compl. at ¶144 repeating and re-alleging the allegations set forth at ¶¶ 1-143).  In addition, Mr. Paquette asserts facts throughout the complaint that not only did the defendants know that they were taking these actions, but that they knew or should have known their actions would cause him emotional distress. Thus, the allegations fall comfortably within a line of cases, which hold that even though the allegations standing alone may not constitute outrageous conduct, they may in fact do so when viewed together.  See Carvalho v. Town of Westport, 140 F. Supp. 2d 95 (2001); Johnson v. Teamsters Local 559, 102 F.3d 21, 25 (1st Cir. 1996); Boyle v. Wenk, 378 Mass. 592, 595, 392 N.E.2d 1053 (1979).

## II.    THE DEFENDANT'S ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT SHOULD ALSO BE DENIED, AS MHC HAS ASSERTED NO REASONS FOR GRANTING THIS DISFAVORED MOTION

Under Rule 12(e) a more definite statement is required only when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good

faith or without prejudice to himself." <u>Villalobos v. N.C. Growers Ass'n</u>, 2000 U.S. Dist. LEXIS 22449 (D.P.R. January 10, 2000) (citing 5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1376 at 577-78). The "Federal Rules employ the concept of notice pleading, and, for this reason, motions for a more definite statement are not favored." <u>Id.</u>, citing, <u>Delta Educ., Inc. v. Langlois</u>, 719 F. Supp. 42, 50 (D.N.H. 1989). The "motion is granted sparingly since it is not to be used as a substitute for discovery in trial preparation, but is to be used only when a pleading is too general." <u>Id.</u> "Whether to grant a motion for a more definite statement is a matter within the discretion of the trial court." <u>Id.</u> (citing Charles Alan Wright & Arthur R. Miller, 5A FEDERAL PRACTICE AND PROCEDURE § 1377 at 600-01).

In addition, Rule 12(e) motions are designed to "strike at unintelligibility, rather than at lack of detail in the complaint." <u>Cox v. Maine Mar. Acad.</u>, 122 F.R.D. 115, 116 (D. Me. 1988). Accordingly, a Rule 12(e) motion properly is granted, "only when a party is unable to determine the issues he must meet." <u>Id.</u> Thus, when a complaint complies with Fed.R.Civ.P. 8 and a more definite statement is not necessary to enable the Defendant to prepare a responsive pleading or the information the defendant desires can properly be elicited in discovery, such motions are typically denied. <u>See</u>, <u>e.g.</u>, <u>Walling v. Bay State Dredging & Contracting Co.</u>, 3 F.R.D. 241, 242 (1942) (a 12(e) motion for a more definite statement should be denied where information can properly be elicited by a pre-trial conference or by depositions, interrogatories, and discovery) (citations omitted).

In this particular case, the Defendant has not made any argument or stated any facts that could arguably support a 12(e) motion.[4]  In addition, no arguments or facts exist that could

---

[4] It is not clear from Defendant's Memorandum whether its 12(e) Motion for a More Definite Statement applies to Counts VI, VII and XII, or whether it applies solely to Count VI.  MHC only analyzed its 12(e) motion in application to Count VI but seems to argue for it broadly in its conclusion.  To the extent that its Motion applies to all the Counts alleged against MHC, the Plaintiff urges that the Motion should be denied on all three counts.

support such a conclusion.  First, as analyzed in detail throughout this Memorandum, the Plaintiff's allegations are not vague or ambiguous and Mr. Paquette has sufficiently plead claims for defamation, civil conspiracy, and intentional infliction of emotional distress against MHC.  In addition, there is no barrier to MHC filing a responsive pleading in this case.  For example, this is not a case, contrary to the Defendant's suggestion in its numerous footnotes, where it is impossible for the defendant to determine which allegations have been launched against it.  See, e.g., Delta Education, Inc. v. Langlois, 719 F. Supp. 42, 50 (D.N.H. 1989) (12(e) motion denied where the defendant was able to determine the claims made against it).  Rather, Mr. Paquette's Complaint apprises MHC of each of the allegations against it, making a responsive pleading possible.  Id.  This is evidenced by the fact that MHC had no difficulty in determining which claims were brought against it for the purposes of arguing its Motion to Dismiss.  Thus, the dangers that a defendant who is granted a more definite statement might run into, such as failing to respond to a Count that a plaintiff made against it, are absent here.  Moreover, the Federal rules allow MHC to plead in the alternative any affirmative defenses that it may want to preserve for in its responsive pleadings.  Fed.R.Civ.P. 8(e).

Finally, any information the Defendant needs to litigate this claim is properly available through the discovery process.   For example, the Defendant claims throughout its brief that it does not have sufficient facts to determine the who, where, when and what of the defamation claim.  (Compl. at Count VI).  As explained previously, where the Complaint provides this detail to the extent required by the Rules and the Complaint is sufficient to allow the Plaintiff to frame a responsive pleading, a Motion for a More Definite Statement should not be allowed to circumvent the rules of discovery.  If the Defendant believes that it has insufficient knowledge in which to answer the Complaint, Fed.R.Civ.P. 8(b) certainly allows MHC to assert this in a

responsive pleading and use the liberal discovery process for obtaining additional facts at a later stage in the litigation.

Finally, the Defendant's assertion throughout its Memorandum that it can not possibly know from the face of the pleadings *when* the alleged statements were made or *what* the substance of the alleged statements consists of is absurd. Such contentions, which imply that Mr. Sullivan has no record of the dates he appeared before hundreds of angry people at public meetings during the time he was conducting the audit; and, that he has no business records of that which he said to the angered mass at such public meetings is so suspiciously disingenuous that it cannot be the basis of a motion in this Honorable Court.

## CONCLUSION

For all the foregoing reasons, the Plaintiff respectfully requests this Honorable Court to deny the Motion to Dismiss and its alternative Motion for a More Definite Statement. In the alternative, should this Honorable Court decide that the pleadings are not sufficient, the Plaintiff respectfully requests that the action not be dismissed and that the Plaintiff be afforded leave to amend.

Respectfully submitted,

ANDREW PAQUETTE

By his attorneys

/s/ Melissa E. Mason Shea
Melissa E. Mason Shea, Esq.
BBO No.: 564693
SULLIVAN, HAYES & QUINN
One Monarch Place – Suite 1200
Springfield, MA 01144-1200
Tel. (413) 736-4538
Fax (413) 731-8206
E-mail: lawoffice@sullivanandhayes.com

Dated this 30th day of August 2005.

## CERTIFICATE OF SERVICE

I hereby certify that on 30th day of August 2005, I electronically filed the Plaintiff's Memorandum of Law in Opposition to the Motion of the Defendant, Melanson, Heath, Company, P.C., to Dismiss Counts VI, VII, and XII of the Plaintiff's First Amended Verified Complaint or, in the Alternative for a more Definite Statement with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following registered participants:

William P. Breen, Jr., Esq.
MURPHY, HESSE, TOOMEY &
  LEHANE, LLP
300 Crown Colony Drive, Suite 410
Quincy, MA 02110

Edward D. Shoulkin, Esq.
TAYLOR, DUANE, BARTON &
  GILMAN, LLP
160 Federal Street
Boston, MA 02110

/s/ Melissa E. Mason Shea
Melissa E. Mason Shea, Esq.

21