UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| ANDREW PAQUETTE, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>NASHOBA REGIONAL SCHOOL )<br>DISTRICT; MELANSON, HEATH AND )<br>COMPANY; JOHANNA VAN HOUTEN )<br>RILEY, in her official capacity as the former )<br>Superintendent for the Nashoba Regional School )<br>District and in her individual capacity; and )<br>CARLOS LLANSO, ANNE KINGAN, ALICE )<br>ROEMER, MARY BETH YENTZ, LINDA )<br>WEATHERBEE, ADAM TOCCI, JEANNE )<br>WYLAND, NANCY FLEMING, in their official )<br>capacities as former members of the Nashoba )<br>Regional School Committee and in their )<br>individual capacities, )<br>    Defendants. ) | Civil Action No. 05-40099FDS |

**REPLY BRIEF OF DEFENDANT, MELANSON, HEATH & COMPANY, P.C., TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

Paquette's Opposition brief is hopelessly laden with factual inconsistencies and distortions of the law.  On the facts, what makes Paquette's allegations of defamation so astonishing is that Paquette admits, as he must, to having committed many of the dubious acts that are the subject of statements he now considers defamatory.  Thus, Paquette admits to having changed the financial reports for the School Committee in a manner that was deliberately intended to provide "less" information, essentially dumbing down those reports.  See Plaintiff's Opposition to co-defendants' motion to dismiss, at 1-2, and plaintiff's First Amended Complaint, par. 18-19, 22.  He also concedes to having "altered" the financial

reports. See Plaintiff's Opposition to co-defendants' motion to dismiss, at 1-2, and plaintiff's First Amended Complaint, par. 18-19, 22. Paquette confesses to having "signed off" on expenditures totaling "another one million dollars" in fiscal year 2002, even though the District was facing a $1 million deficit and the School Committee had previously ordered a "spending freeze." See Plaintiff's Opposition to MHC's motion to dismiss, at 2, and plaintiff's First Amended Complaint, par. 23-25. Having admitted to engaging in these practices, which ultimately contributed to the School District's fiscal crisis, what is Paquette's response? He says, in essence, that Superintendent Riley "often forced [him]" or "personally instructed" him to do these things. See Plaintiff's Opposition to MHC's motion to dismiss, at 2, and plaintiff's First Amended Complaint, par. 23-25.[1]

Paquette then complains that the Superintendent, School Treasurer and members of the School Committee placed the blame for the "extensive budget deficit" "solely on Mr. Paquette." See Amended Complaint at ¶33, and Opposition to co-defendant's motion to dismiss at 3. However, when given the opportunity on multiple occasions to explain these and other financial discrepancies, Paquette, by his own admission, refused to cooperate with MHC in its financial investigation of the School District's fiscal problems, purportedly because a separate criminal investigation (not involving MHC) had been initiated. Thus, after unabashedly refusing to cooperate with the accountants' investigation despite multiple requests, Paquette now complains with a straight face that the co-defendants "did not allow Paquette to present his position before any final action was taken against him," and that he

---

[1] Of course, the scope and severity of the School District's fiscal problems were much worse and dated back farther than Paquette now lets on, but for the purposes of a motion to dismiss, MHC acknowledges that the parties are confined to using the plaintiff's own pleading.

was denied an "adequate name-clearing opportunity." See Plaintiff's Opposition to Co-Defendants' Motion to Dismiss at 5.

With respect to the controlling law, Paquette's Opposition seeks to obscure the deficiencies of his defamation claim by grossly misstating MHC's argument and the judicial precedent that supports it. Recognizing that Federal Court precedent renders his Amended Complaint defective on its face, Paquette argues that MHC applies the defamation pleading requirements employed by Massachusetts state courts and that MHC seeks to have him plead each and every element of his claim with specificity. Those assertions are false. Further, while Paquette goes to great lengths to tell the Court what is not required to plead defamation, his Opposition is evasive, if not outright silent, when it comes to identifying the requirements for pleading this disfavored claim. Simply put, the Federal Rules and Federal case law, including that of this and other Circuits, require a defamation plaintiff to aver the language challenged as defamatory in order to survive a Rule 12 motion. Phantom Touring, Inc. v. Affiliated Publ'ns, 953 F.2d 724, 728 n. 6 (1st Cir. 1992); Acciavatti v. Prof'l Servs. Group, 982 F. Supp. 69, 77 (D.Mass. 1997). In drafting both his Complaint and Amended Complaint, Paquette did not even bother to try to satisfy this requirement. Interestingly, the very cases cited by Paquette concern defamation plaintiffs who, in contrast to Paquette, pleaded their claims with far more specificity then he has done.

Paquette's discussion of civil conspiracy law conspicuously omits the stringent pleading requirements for stating a claim under this very limited cause of action. Carroll v. Xerox Corp., 294 F.3d 231, 243 (1st Cir. 2002); Kibbe v. Potter, 196 F. Supp. 2d 48, 76 (D.Mass. 2002); Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977) (emphasis added). As

discussed in greater detail below, Paquette's desperate attempts to salvage his conspiracy and emotional distress claims are legally invalid and ultimately unavailing.

1.  **The Plaintiff's Opposition Attempts To Distract This Court From Applying Well-Established Pleading Requirements For Defamation.**

According to the U.S. Court of Appeals for the First Circuit, "a defendant is entitled to knowledge of the ***precise language challenged as defamatory***." Phantom Touring, 953 F.2d at 728 n. 6 (emphasis added). Similarly, the U.S. District Court has held that a defamation claim should be dismissed as "deficient" where a plaintiff "fail[s] to describe ***any relevant communication(s)*** by Defendants, whether superficially defamatory or not." Acciavatti, 982 F. Supp. at 77 (dismissing defamation claim pursuant to Rule 12(b)(6)); see Fickes v. Sun Expert, Inc., 762 F. Supp. 998, 1002 (D.Mass. 1991) (permitting Rule 12(e) motion). Thus, in order to properly plead defamation pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must, at a minimum, aver the language he is challenging as defamatory. Phantom Touring, 953 F.2d at 728 n. 6; Acciavatti, 982 F. Supp. at 77; see Bleau, 371 F. Supp. 2d at 2 (interpreting Phantom Touring in the context of a complaint that "specifically identifies the scope of comments at issue").

Paquette's opposition seeks to divert attention from this well-established case law by baiting this Court with an argument that MHC is seeking to apply state pleading requirements to his defamation claim. Contrary to the plaintiff's allegations, MHC never argued that Mr. Paquette must specifically plead each and every element of his defamation claim. Rather, MHC's motion plainly points out that the plaintiff's Amended Complaint fails to provide the language challenged as defamatory, including *what* statements were allegedly

made by MHC, *when* these statements were allegedly made, and *where* copies, if any, of such statements could be located.

Further, MHC does not dispute Mr. Paquette's contention that he is not required "to set forth allegedly defamatory statements *en haec verbis*." Davidson v. Cao, 211 F. Supp. 2d 264, 276 (D.Mass. 2002). However, "Even in federal courts and jurisdictions in which *in haec verba* pleadings are not required, **the defamation must be pleaded with enough specificity to permit the defendant to respond appropriately to the complaint, including the ability to allege that the communication in question was not defamatory**." Robert D. Sack, SACK ON DEFAMATION §2.4.13 (2004) (citing, *inter alia*, Phantom Touring). Thus, the plaintiff's contention that MHC is attempting to impose improper pleading standards is simply a red herring aimed at detracting attention from Paquette's disregard of the federal pleading requirements for defamation. This argument cannot and will not change the unambiguous law of this jurisdiction, which requires the plaintiff to allege more than vague categorizations of supposedly defamatory statements in order to survive a Rule 12 motion. Phantom Touring, 953 F.2d at 728 n. 6; Acciavatti, 982 F. Supp. at 77; see Bleau, 371 F. Supp. 2d at 2.

2. **The Plaintiff's Vague And Conclusory Allegations Cannot Usurp The Requirements For Properly Pleading Defamation In Federal Court.**

Perhaps realizing the futility of his attempt to divert attention from the inadequacies of his pleading, the plaintiff's Opposition goes on to assert that he *has* complied with the federal pleading requirements for defamation. See Plaintiff's Opposition at 9-10. In support of this argument, Mr. Paquette regurgitates the same vague and conclusory allegations about MHC previously cited in his Complaint. See Plaintiff's Opposition at 10. Paquette's idea of

pleading a defamation claim against MHC is to offer vague and ultimately meaningless allegations, such as claiming that MHC made statements at public meetings "implicating that the plaintiff had engaged in criminal activity." Amended Complaint at ¶s 91-2. But what does that mean? Nowhere does Paquette identify what crime MHC implicated him in, or what activity constituted the crime. He does not offer the words used by MHC, and does not even identify the specific meeting(s) at which MHC "implicated" him in criminal activity.

Not to be outdone by his failure to provide the requisite information relating to this so-called "implication," Paquette next offers equally useless allegations that MHC made false statements about his "job performance," "unethical accounting practices," and that he "was to blame for the District's financial crisis." Again, these vague, conclusory allegations beg fundamental questions: What statements did MHC make regarding Paquette's job performance that he now contends were false? To which "accounting practices" does Paquette refer? Are they the same suspect accounting practices to which Paquette has already conceded having committed, purportedly because the Superintendent "forced" or "instructed" him to do so? If so, then the undisputed truth of the alleged statements would render the defamation claim a nullity. At a minimum, Paquette should have provided the language he claims is defamatory so that MHC could determine whether to admit or deny having uttered the words.

Unfortunately, because Paquette has, in violation of settled precedent, failed to plead the minimal elements necessary for defamation, MHC cannot determine the answers to these and other fundamental questions. Paquette's vague allegations run afoul of what <u>Sack on Defamation</u> describes as the requirement to "plead[] with enough specificity to permit the

defendant to respond appropriately to the complaint, including the ability to allege that the communication in question was not defamatory."

The plaintiff's opposition repeatedly clings to the District Court's decision in Davidson, claiming that it demonstrates the sufficiency of his defamation claim. See Plaintiff's Opposition at 7-11. The analogy does not serve the plaintiffs cause.

The dearth of information contained in Mr. Paquette's allegation is considerably *less* than that provided in Davidson. In Davidson, the defamation claim, which appeared in the form of a counterclaim, asserted that plaintiffs "disseminated and discussed the complaint and the allegations contained therein with the press" after the lawsuit was filed. 211 F. Supp. 2d at 276. Unlike Mr. Paquette, the counterclaim plaintiff in Davidson "identifie[d] the place by naming the various newspapers containing the false and defamatory statements and reasonably infer[red] the time as at or around the time of the May 2000 filing of the complaint." Id. That pleading allowed the defamatory language to be identified with relative ease. To suggest, as Paquette now does, that his pleading provides an equal degree of specificity is ludicrous. See Plaintiff's Opposition at 10-11. Mr. Paquette avers that unspecified accusations were made "at public meetings and to the press during the period [MHC] was conducing the audit for the District." Id. However, having also stated in his Complaint that *numerous* public meetings were held about the District's financial crisis and that MHC was one of "hundreds" in attendance at these meetings, the plaintiff's allegations simply add up to an assertion that MHC allegedly defamed the plaintiff *at some point* during the period in which it investigated the District's finances. See, e.g., Plaintiff's Opposition at 20; Plaintiff's Complaint ¶ 102. To expect MHC to recall each and every statement it might

have made more than three years ago during hours of public meetings held in a span of months and then guess which statements the plaintiff considers defamatory is, to use Paquette's own vernacular, "absurd." See Plaintiff's Opposition at 20. Indeed, rather than helping the plaintiff, Davidson highlights the wide rift between sufficient defamation pleadings and Paquette's defamation pleading.

      3.      **The Plaintiff Drastically Overstates The Significance Of Bleau v. Greater Lynn Mental Health & Retardation Association.**

Mindful that the First Circuit's holding is dispositive, Paquette's Opposition attempts to evade Phantom Touring's requirement that "a defendant is entitled to knowledge of the precise language challenged as defamatory" by citing a recent opinion of the U.S. District Court in Bleau, *supra*, of which only a portion was designated for publication. 371 F. Supp. 2d at 1-2. On pages 8-9 of his Opposition, Paquette asserts that Bleau stands for the proposition that federal law does not require the plaintiff to provide any "specific wording" when pleading a claim for defamation. This characterization is simply incorrect.

First, as the plaintiff is undoubtedly aware, the U.S. District Court cannot overturn the law of the First Circuit. Thus, *irrespective* of the holding in Bleau, the pleading requirements outlined in Phantom Touring remain intact. Second, Bleau's assessment of Phantom Touring explicitly hinges on instances where "a complaint *specifically identifies* the scope of comments at issue," as was the case in Phantom Touring.[2] Id. at 2. As discussed *supra*, and unlike the plaintiff in Phantom Touring, Mr. Paquette does not *specifically identify* the extent of any allegedly defamatory comments in his Complaint. Finally, the essential

---

[2] In Phantom Touring, the plaintiff's Complaint provided the alleged defamatory statements and the specific dates in which the articles containing these statements appeared in *The Boston Globe*. 953 F.2d at 725-28.

holding in Bleau is that state pleading requirements do not apply in federal court. Id. However, as MHC has stated from the opening paragraph of its defamation argument in its motion to dismiss, it is not asking this Court to impose state pleading requirements. Construing Bleau in the distorted manner proposed by Paquette would fly in the face of the holdings of the First Circuit Court of Appeals, other District Court cases, and the decisions of courts in other Circuits.

4. **The Plaintiff Has Not Properly Pleaded A Claim For Civil Conspiracy.**

According to his Opposition, Paquette's civil conspiracy claim "derives from 'concerted action,' whereby liability is imposed on one individual for the tort of another." See Plaintiff's Opposition at 13. Paquette contends that MHC is liable "for the torts the Plaintiff has suffered through the concerted action of multiple Defendants to commit a wrongful act." Id. at 12-13. In order for liability to attach under this theory, the plaintiff asserts there must be "a common design or an agreement… between two or more persons to do a wrongful act" and "proof of some tortious act in furtherance of the agreement." Id. at 13 (citing Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994)). What this synopsis of civil conspiracy law conveniently omits, however, is any reference to the stringent *pleading* standards required for successfully stating a claim for this *very limited* cause of action. Carroll v. Xerox Corp., 294 F.3d 231, 243 (1st Cir. 2002); Kibbe v. Potter, 196 F. Supp. 2d 48, 76 (D.Mass. 2002); Jurgens v. Abraham, 616 F. Supp. 1381, 1386 (D.Mass. 1985).

It is well-established in the First Circuit that "*complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material*

*facts.*" Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977). Indeed, civil conspiracy must "be pleaded with *reasonable certainty and definiteness* so as to inform the opposing party of the nature of the conspiracy charged." NCR Credit Corp. v. Underground Camera, Inc., 581 F. Supp. 609, 611 (D.Mass. 1984) (emphasis added). A complaint that contains references to conspiracy but "offers few insights into the specific nature of the concerted action" will be dismissed. Slotnick, 560 F.2d at 33 ("Despite language hinting at a wider conspiracy, the plaintiff has failed to plead facts supporting these vague claims, and the courts need not conjure up unpleaded facts to support these conclusory suggestions"); id. at 612 (dismissing civil conspiracy claim due to insufficiency of vague allegations of concerted action).

Paquette contends there is "no question" that his Complaint sufficiently alleges civil conspiracy. See Plaintiff's Opposition at 13. Paquette's certainty is ostensibly demonstrated by his assertion that "the District hired [MHC] to conduct the audit, make public statements and produce a report with the purpose of pointing the finger at Plaintiff." See Plaintiff's Complaint ¶¶ 101. What Paquette has actually done, however, is take a vague and deficient defamation claim that omits the alleged defamatory statements and stacked an equally vague and nebulous claim for conspiracy on top. The law is clear that conclusory allegations of this magnitude, offered without any trace of support other than the plaintiff's own self-serving assertions, are insufficient to properly state a claim for civil conspiracy. Chongris, 811 F.2d at 37; Slotnick, 560 F. 2d at 33; Prudential Ins. Co. of America v. Turner & Newhall, PLC, 1988 WL 150491, *10 (D.Mass. 1988) (dismissing conspiracy claim because "plaintiff's amended complaint is starkly devoid of any allegations with respect to [the]

elements [of conspiracy] and, as such, fails to state a claim for conspiracy under Massachusetts law"); NRC Credit Corp., 581 F. Supp. at 611-12.

### 5. The Civil Conspiracy Claim Also Fails Because It Adds Nothing To The Defamation Claim.

The plaintiff's civil conspiracy claim is also fatally flawed because, upon a thorough review of the allegation, it adds nothing to the plaintiff's underlying claim for defamation. "Where the allegations of conspiracy add nothing to the underlying tort allegations, the courts have repeatedly held that the gist of such an action is not the conspiracy alleged, but the tort committed against the plaintiff." Grant, 183 F. Supp. 2d at 364 (granting summary judgment for defendants on civil conspiracy claim); Putnam v. Adams Communication Corp., 1987 WL 13262, *9 (D.Mass. 1987) (dismissing conspiracy claim pursuant to Rule 12(b)(6)). Perhaps the most striking similarity between the plaintiff's civil conspiracy and defamation allegations is the fact that paragraph 107 of the civil conspiracy claim, which is *identical* to paragraph 98 of the defamation claim, provides that the vague and unspecified defamatory statements allegedly made by MHC:

> Caused the Plaintiff to be held up to public ridicule and humiliation, have interfered with his efforts to obtain other employment, and have caused him great personal and professional embarrassment and shame, whereby he has suffered special and general pecuniary loss and his good name and character have been greatly injured.

As pleaded, Mr. Paquette allegedly suffered the *exact same* damages as a result of MHC's alleged defamation as he did from MHC's alleged conspiracy. This underscores the absence of any significant distinction between Counts VI and VII. Paquette's conspiracy claim should also be dismissed because it simply disguises the defamation claim with a new name.

### 6. Plaintiff's Emotional Distress Claim Merely Parrots the Elements of The Claim, but Impermissibly Omits Factual Support.

As MHC noted in its motion, a claim for intentional infliction of emotional distress will be dismissed where a "plaintiff's complaint *parrots* the requisite elements of the claim but *lacks factual support for his wholly conclusory allegations*." Kurker, 44 Mass. App. Ct. at 193 (emphasis added); see Chongris, 811 F.2d at 37; Remco, 814 F. Supp. at 174. In Massachusetts, the tort of intentional infliction of emotional distress requires that:

1. The actor intended to inflict emotional distress or that he knew or should have known that emotional distress would result;
2. The conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community;
3. The actor's conduct caused the plaintiff's distress; and
4. The emotional distress suffered by the plaintiff was severe and of a nature that no reasonable person could endure it.

Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996). Paquette asserts that his claim "does not simply 'parrot' the elements of an intentional infliction of emotional distress claim as the Defendant contends." His Complaint belies this assertion. It claims:

144. The Plaintiff repeats and re-alleges his allegations set forth at paragraphs 1 through 143 of this Complaint as if fully restated herein.
145. The Defendants intended to inflict emotional distress or knew or should have known that emotional distress was likely to result from their conduct.
146. The Defendants' conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community.
147. The Defendants' conduct caused plaintiff's emotional distress.
148. The emotional distress suffered was severe and of a nature that no reasonable person could be expected to endure it.

The plaintiff's Complaint does not even *attempt* to provide facts in support of these allegations. Paquette tries to circumvent this glaring inadequacy by stating that he did not feel compelled to "regurgitat[e]" all of his prior—and notably deficient-- factual allegations in Count XII. Paquette's Opposition then continues by doing just that: regurgitating the same vague, unsupported and "wholly conclusory allegations" that form the foundation of his claims against MHC. Kurker, 44 Mass. App. Ct. at 193 (emphasis added); see Chongris,

811 F.2d at 37; <u>Remco</u>, 814 F. Supp. at 174.  Thus, the plaintiff's contention that he has sufficiently pleaded intentional infliction of emotional distress must fail.  <u>Id.</u>

## **CONCLUSION**

MHC respectfully requests that this Court grant its Motion to Dismiss Counts VI, VII and XII of the plaintiff's First Amended Verified Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, compel the plaintiff to provide a more definite statement in accordance with Rule 12(e).

October 12, 2005

The Defendant,
MELANSON, HEATH & COMPANY, P.C.
By its attorneys,

/s/ Edward D. Shoulkin
Edward D. Shoulkin
B.B.O. # 555483
TAYLOR, DUANE, BARTON
 & GILMAN, LLP
160 Federal Street, 5th Floor
Boston, MA  02110
(617) 654-8200